850 So.2d 1100 (2003)
John MOSLEY, Sr., Plaintiff-Appellant,
v.
PENNZOIL QUAKER STATE, (formerly known as Westland Oil Company), Defendant-Appellee.
No. 37,199-WCA.
Court of Appeal of Louisiana, Second Circuit.
July 23, 2003.
*1101 S.P. Davis, for Appellant.
Franklin H. Spruiell, Jr., for Appellee.
Before WILLIAMS, STEWART and PEATROSS, JJ.
WILLIAMS, J.
In this workers' compensation case, the claimant, John Mosley, Sr. ("Mosley"), appeals from a judgment in favor of the defendant, Pennzoil Quaker State Company ("Pennzoil"),[1] denying his request for a second surgery as recommended by his treating physician. For the following reasons, we affirm.

FACTS AND PROCEDURAL BACKGROUND
On or about April 10, 1995, the claimant, John Mosley, Sr., injured his lower back while loading and unloading cases of oil during his employment as a forklift operator for Pennzoil. In June 1995, Mosley was examined by Dr. Carl Goodman, an orthopedic surgeon, who concluded that Mosley had a herniated disc at L4-5 and required surgery. In July 1995, Mosley began treatment with Dr. David Cavanaugh, a neurosurgeon. Dr. Cavanaugh attempted conservative treatment of Mosley until February 4, 1998, when he performed *1102 lower-back surgery. Mosley's surgery consisted of a micro-surgical bilateral laminotomy and diskectomy at the L4-5 and L5-S1 discs. These procedures involved the complete removal of the disc material at both disc levels. After the surgery, Dr. Cavanaugh released Mosley from work until August 1, 1999.
In October 1998, a post-surgical MRI was conducted. According to Dr. Cavanaugh, Mosley was recovering satisfactorily and there was no evidence of disc herniation or stenosis at L4 or L5. In August 1999, Mosley returned to work, in the position of inspector/packer, with various work restrictions in accordance with Dr. Cavanaugh's orders. Pennzoil accommodated Mosley's physical condition as requested by Dr. Cavanaugh by eliminating certain functions of Mosley's position. Complaining of continuous and persistent pain, Mosley did not perform the required work and subsequently sought treatment from another physician, Dr. Pierce Nunley, an orthopedic surgeon. In December 2000, Dr. Nunley ordered another MRI of Mosley's lower back. Based upon this MRI, Dr. Nunley concluded that Mosley was suffering from a recurrent disc herniation at L4-5 and recommended that Mosley undergo a decompression and spinal-fusion surgery. In response to the recommendation, Pennzoil had Mosley re-examined by Dr. Goodman, who found no evidence of a recurrent herniation, but noted that the MRI showed the existence of scar tissue from the previous surgery.
Because of the conflicting interpretations of the MRIs, Pennzoil filed a formal request for Mosley to submit to an independent medical examination ("IME"), pursuant to LSA-R.S. 23:1123 and 1317.1. The workers' compensation judge ("WCJ") appointed Dr. Robert E. Holladay, IV, also an orthopedic surgeon, to perform the IME. In December 2001, Dr. Holladay examined Mosley. He opined that Mosley had not suffered a recurrent disc herniation and refused to recommend surgery.
Subsequently, the WCJ conducted a hearing to determine whether Mosley should be allowed to undergo the decompression and fusion surgery, at Pennzoil's expense, as recommended by his treating physician. After ordering briefs and taking this matter under advisement, the WCJ denied the claimant's request for decompression and fusion surgery and dismissed his claim. Mosley appeals.

DISCUSSION
Mosley contends the WCJ erred in denying his request for a second surgery for a recurrent herniated disc as recommended by Dr. Nunley, his treating physician. He argues the judge improperly gave greater weight to the opinions of Drs. Goodman and Holladay than to the opinion of his treating physician.
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, 96-2840 (La.7/1/97), 696 So.2d 551; Smith v. Louisiana Dep't of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129; Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Banks, supra; Freeman, supra; Stobart v. State, 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Banks, supra; Stobart, supra. Thus, if the factfinder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not *1103 reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks, supra.
As a general rule, the testimony of a treating physician should be accorded greater weight than that of a physician who examines a patient only once or twice. McDonald v. New Orleans Private Patrol, 569 So.2d 106 (La.App. 4th Cir. 1990). However, the treating physician's testimony is not irrebuttable, and the trier of fact is required to weigh the testimony of all medical witnesses. Celestine v. U.S. Fidelity & Guaranty Co., 561 So.2d 986 (La.App. 4th Cir.1990).
Mosley contends the trial court was required to give Dr. Nunley's testimony and opinion more weight than the opinion of Drs. Goodman and Holladay. As support for this contention, he cites McCartney v. Columbia Heights Nursing Home, Inc., 25,710 (La.App.2d Cir.3/30/94), 634 So.2d 927. We do not find that McCartney stands for the proposition that the treating physician's opinion must prevail over that of other medical experts in every case. The factfinder is not precluded from making determinations regarding the credibility of witnesses and respect should be given to those conclusions. After weighing and evaluating the medical testimony, the trier of fact may accept or reject the opinion expressed by the medical expert. The factfinder should evaluate the expert testimony by the same rules which are applicable to other witnesses and the trial court is not bound by expert testimony. Id. Further, the treating physician's testimony must be weighed in light of other credible evidence. Latiolais v. Jernigan Bros., Inc., 520 So.2d 1126 (La. App. 3d Cir.1987).
An IME's medical conclusions should be given significant weight because the IME is an objective party. Fritz v. Home Furniture-Lafayette, 95-1705 (La. App. 3d Cir.7/24/96), 677 So.2d 1132. Nevertheless, the opinion of the IME is not conclusive and the WCJ must evaluate all of the evidence presented in making a decision as to a claimant's medical condition. Brasseaux v. Abbeville General Hosp., 97-1062 (La.App. 3d Cir.3/18/98), 710 So.2d 340, reversed in part on other grounds, 98-1066 (La.6/5/98), 720 So.2d 673. "[T]he significant weight [given to the testimony of a court-appointed expert] can be less or greater depending on the qualifications or expertise of the physician, the type of examination he performs, his opportunity to observe the patient, his review of other physicians' examinations and tests, and any other relevant factors." Green v. Louisiana Coca Cola Bottling Co., Ltd., 477 So.2d 904 (La.App. 4th Cir. 1985), writ denied, 478 So.2d 910 (La.1985) (emphasis added).
At the hearing, the medical evidence was presented through the deposition testimony and medical records of the respective physicians. Dr. Nunley had treated Mosley since November 29, 2000. Dr. Nunley is an orthopedic surgeon who specializes in spinal disorders and fusion surgeries and has been in the practice less than ten years. Dr. Nunley diagnosed Mosley with a possible recurrent disc herniation after reviewing Mosley's previous MRI conducted on October 16, 1998; however, after reviewing the new MRI conducted on December 19, 2000, Dr. Nunley opined that Mosley had definitely sustained a recurrent disc herniation as a result of the April 1995 accident. Dr. Nunley testified that he informed Mosley that he had two options with regard to his back injury, either live with the pain or undergo a decompression and spinal-fusion surgery. Dr. Nunley concluded that Mosley was a reliable and credible patient and *1104 Mosley's subjective symptoms were verified by the objective findings.
In support of its position, Pennzoil submitted the deposition testimony of Drs. Cavanaugh, Goodman and Holladay. Dr. Cavanaugh was Mosley's treating physician for at least four years. Dr. Goodman was the orthopedic specialist who examined Mosley in 1995 and concluded that Mosley needed lumbar surgery because he had suffered a disc herniation at L4-5. Dr. Holladay was the IME appointed by the WCJ. Drs. Goodman and Holladay opined that Mosley had not suffered a recurrent disc herniation and was not a good candidate for a second back surgery.
Mosley contends there is no comparison of the medical evaluation and treatment performed by Dr. Nunley to the evaluations by Drs. Goodman and Holladay. He asserts that it is impossible for Drs. Goodman and Holladay to possess the quality and quantity of factual medical observation, testing, evaluation and personal knowledge of his condition as that possessed by his treating physician. Mosley also alleges that Dr. Goodman has performed only a small number of spinal fusion surgeries.
According to Dr. Goodman's deposition testimony, he is a board-certified orthopedic surgeon, who has practiced in the Shreveport area for thirty-four years. He testified that in 1998, he completed a spine fellowship, and he presently has limited his orthopedic practice to problems and disorders of the spine, including spinal surgery. As previously stated, Dr. Goodman was the first specialist to examine Mosley after his injury. He recommended that Mosley undergo the first lumbar surgery. Unlike Dr. Nunley, Dr. Goodman testified that he examined Mosley and reviewed MRIs of Mosley's back, both pre-surgery and post-surgery. Based upon his review of both MRIs, Dr. Goodman determined that there was no evidence of a recurrent disc herniation, but only scar tissue. According to Dr. Goodman, during the course of the physical examination, Mosley would indicate that he was incapable of moving. Mosley complained of numbness in both of his legs and pain when the doctor lightly touched his lower back. Dr. Goodman stated that there was simply no medical explanation for the complaints Mosley expressed during the physical examination. He further testified that he did not know of any related medical condition that would cause a patient to jump when lightly touched on the skin of the back or that would cause both of the patient's legs to "go numb from the hip down." He opined that Mosley was exaggerating his pain and symptoms.
Dr. Holladay reached the same conclusion with regard to Mosley's exaggeration of his pain and symptoms. Dr. Holladay performed various non-physiological tests to determine whether Mosley was suffering psychological stress or whether an "illness behavior" was influencing his medical situation. After completing numerous tests, Dr. Holladay determined that Mosley was not a good surgical candidate, even if he had suffered a recurrent disc herniation. Dr. Holladay summarized his conclusions regarding Mosley's "illness behavior" as follows:
Q: And ultimately, in terms of the analysis, did you reach an opinion as to whether or not Mr. Mosley was a viable candidate for additional lumbar surgery?
A: Based on my review and examination, review of the records and looking at the X-rays, I did not feel that he was a good surgical candidate.
Q: Can you tell us in kind of a summary fashion why you came to that conclusion? *1105 A: Well, a combination of the history and the records that I receivedapparently this proposal for surgery was made by Dr. Nunleyand from my review of the records of the evaluation he had had at that point, the treatments that he had had, the things that had been tried which had all failed to give him any relief whatsoever, and then based upon my physical examination and my findings from that physical examination, I didn't feel that he was a candidate for surgery. There were no objective neurologicalabnormal neurological findings. There were really no objective orthopedic findings. There was a display of a large amount of non-physiologic responses which are anatomically not possible to elicit some of the responses that were obtained, and there is no way to explain that except on an emotional basis. From a physiological basis related to his spine there would be no connection.
Based on that, any surgical procedure in my opinion would fail miserably, and in fact, I think he would be much worse off than what he is now if he had an operation.
Q: All right. Let me ask you specifically about the non-physiologic signs that you referenced in your previous answer, and I believe those are referenced at the bottom of page six of your particular report. Could you tell us what you did and why you performed these tests or procedures on Mr. Mosley?

. . . .
A: And in specific, the things that were done: Mr. Mosley was sitting on a stool, and my purely putting my hands on his shoulders and putting some downward pressure causes low back pain ... I wasn't putting a lot of pressure. Just a little mild pressure, and it showed that it elicits complaints of back pain and tingling in his feet. There's no way that can cause tingling in the feet, me just putting a little pressure on his shoulders. Having him stand up with his hands at his side and then for me just holding his pelvis, just rotating his pelvis about 45 degrees, his pelvis and his shoulders rotating togetherthere's no movement of the lower backthat response or movement of that caused a response of back pain and numbness and tingling in his legs and his feet. Again, there's no way that anatomically you can elicit or stretch anything or pull anything that would make him have back pain or leg pain.
Testing him for numbness with a sharp pinwheel, he had numbness from his knees all the way down to his feet in kind of like a stocking or a long-leg stocking from the knee down the feet. To have complete numbness all around the leg would involve three or four different nerve roots that come out of the back. That just doesn't happen unless you're paralyzed, basically. And so the finding of stocking anesthesia is another one of the Waddell signs ...
I put my hand on his breastbone and my hand on the back of his ribcage, and just me pushing the ribcage front to backI wasn't even touching his lower back, just his mid-backthat causes a response of numbness and tingling in both of his feet. There's no way anatomically that can occur.
So all those signs to me showed extreme exaggeration of the symptoms that he was complaining of, and there's not a physical or physiological basis that you could explain that kind of response.
*1106 Q: So from a medical standpoint, and specifically an orthopedic surgical standpoint, there is no explanation for those responses based on the procedures that you did ... ?

. . . .
A: I would say he has an emotional component which could explain those complaints.
Based upon their interpretations of the MRIs and their physical examination of Mosley, Drs. Holladay and Goodman expressed reservations that Mosley was not a good candidate for a second surgery and was exaggerating his complaints. On the other hand, Dr. Nunley had no reservations and interpreted the MRIs and Mosley's physical symptoms differently. Therefore, there existed two different and separate views of the evidence in this regard and the WCJ chose to accept the opinions of Drs. Holladay and Goodman over the opinion of Dr. Nunley. Although, the WCJ may accord greater weight to the treating physician's opinion, his or her opinion is not irrebuttable or conclusive. Here, the defendant successfully rebutted Dr. Nunley's opinion by presenting the testimony of Drs. Goodman, Holladay and Cavanaugh. We also note that Dr. Cavanaugh was Mosley's treating physician for four years. After viewing a post-surgery MRI, Dr. Cavanaugh determined that there was no evidence of a re-current disc herniation. Further, because Dr. Holladay was a court-appointed expert, his testimony should be accorded great weight as the "objective" physician. Thus, Dr. Nunley's status as the "treating physician" is counterbalanced by the credible testimony of the other qualified medical experts. Based on the evidence presented in this case, we find the WCJ did not abuse her discretion in refusing to give Dr. Nunley's opinion greater weight than the opinion testimony of the other physicians who examined Mosley. Consequently, we conclude that the WCJ did not err in denying Mosley's request for a second lumbar surgery. This argument is without merit.

CONCLUSION
For the reasons expressed, the judgment of the Office of Workers' Compensation is affirmed. Costs of this appeal are assessed to the claimant, John Mosley, Sr.
AFFIRMED.
NOTES
[1] The record reflects that the defendant/employer was formerly known as Westland Oil Company. In this opinion, we will refer to the defendant as Pennzoil.