859 So.2d 296 (2003)
William Scott BRUCE, Plaintiff-Appellee,
v.
STATE FARM INSURANCE COMPANY, et al., Defendant-Appellant.
No. 37,704 CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 2003.
*299 Neal L. Johnson, Jr., Monroe, for Appellant.
T. Taylor Townsend, for Appellee.
Before BROWN, WILLIAMS and DREW, JJ.
WILLIAMS, J.
In this motor vehicle accident case, the defendant, State Farm Insurance Company ("State Farm"), appeals a judgment in favor of the plaintiff, assessing defendant with 100% fault in causing the accident. The trial court awarded plaintiff damages for pain and suffering, medical expenses, past lost wages, loss of enjoyment of life and property damage. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
This accident occurred on April 27, 2000, between a 1994 Mack truck, owned and operated by William Scott Bruce ("Bruce") and insured by Burns & Wilcox of Louisiana, LTD., and a 1997 Ford pickup truck operated by Charles David Daniel ("Daniel"), owned by his company, Daniel Butane Gas Company, and insured by State Farm.
On April 27, 2000, at approximately 7:50 a.m., Bruce was operating his eighteen wheel log truck in the eastbound lane of La. Hwy 3128, a two-lane black top highway with gravel shoulders, which is commonly referred to as the Paper Mill Cutoff Road. Bruce signaled and attempted to make a left turn across the westbound lane of traffic onto a service road. However, Daniel, who was driving his pickup truck in the same direction as Bruce, attempted to pass Bruce's vehicle in a "no passing" zone. As Bruce began to negotiate the left turn, Daniel's vehicle collided with the left side of Bruce's eighteen-wheel truck. As a result of the accident, Bruce sustained property damage to his vehicle and personal injuries.
Subsequently, Bruce filed a petition for damages, alleging that Daniel was at fault in causing the accident. The defendants, Daniel Butane Gas [Company, Inc., State Farm and Charles Daniel, filed an answer denying the plaintiff's allegations. Plaintiff's uninsured motorist insurer, Burns & Wilcox of Louisiana, LTD., also named as a defendant, was voluntarily dismissed from the lawsuit with prejudice. Prior to trial, State Farm paid $4,964.57 for repairs made to plaintiff's vehicle, $6,578.24 for loss of use of the vehicle during the repairs and $903.26 for additional property damage.
At trial, Trooper Clilfton Brister, the state trooper who investigated the accident, testified that both vehicles were traveling in an easterly direction with nothing to impede the view of the drivers. Trooper Brister testified that although he did not issue Daniel a citation, his investigation revealed that Daniel had attempted to pass the eighteen-wheel truck in a "no passing" zone. Photographs of the scene were filed into evidence. They depicted *300 the curve in the roadway and a slight incline. The photographs also depicted that there was a double-yellow center line in the highway where the collision occurred, evidencing that the vehicles were in a "no passing" zone.
At the conclusion of the trial, the court found that the plaintiff had legally stopped his vehicle and had exercised care and caution in making his left turn across the westbound lane of traffic. The trial court concluded that Daniel was 100% at fault in causing this accident because he had disregarded plaintiff's turn signal and executed an improper pass in a "no passing" zone. The court awarded plaintiff damages in the amount of $10,940.58 for property loss, $5,512.50 loss of enjoyment of life. The defendants appeal the judgment.

STANDARD OF REVIEW
It is well settled that a court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." When there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880, 881 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).

DISCUSSION
Liability
The defendants contend the trial court committed manifest error in finding that Daniel was 100% at fault in causing the accident. They maintain that plaintiff was at a "dead stop" on the eastbound shoulder when he suddenly and without warning executed a left-hand turn across La. Hwy 3128. The defendants argue that plaintiff's actions were negligent and, therefore, he was partially at fault in causing the accident.
The parties do not dispute that LSA-R.S. 32:101(A)(2) and 32:104(A) are applicable to the instant case. LSA-R.S. 32:101(A)(2) provides:
At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.
LSA-R.S. 32:104(A) provides:
No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
In their brief, the defendants cite this Court's decision in Gryder v. Jackson, 32,037 (La.App.2d Cir.6/16/99), 739 So.2d 246, as support for their position; however, the facts of the present case are readily distinguishable from the facts of that case. In *301 Gryder, this court found that evidence of the left-turning driver's failure to use her rearview mirror to view an overtaking truck in a high-speed area of highway, where the passing maneuver by the overtaking truck was appropriate, supported a finding that the left-turning driver was partially at fault when the overtaking truck struck the left-turning car. We found that the fully loaded truck had traveled completely into the passing lane, and even over upon the shoulder, for a considerable length of time before the impact occurred. We stated:
Judicial interpretations of LSA-R.S. 32:104(A) have made it clear that a leftturning motorist has a strong duty of care. The duty includes properly signaling an intention to turn left and keeping a proper lookout for both oncoming and overtaking traffic in order to ascertain that the left turn can be made with reasonable safety. Agency Rent-A-Car, Inc. v. Hamm, 401 So.2d 1259 (La.App. 1st Cir.1981). The left-turning motorist is required not only to look to the left before turning, but has a duty to see what should be observable. Hollier v. Gilder, 306 So.2d 475 (La.App. 3d Cir. 1975). If the driver of a left-turning vehicle signals a left-hand turn, the leftturning driver only fulfills one-half of the requirement for making such maneuver for it remains incumbent upon him to look to his rear to see if the lefthand lane is clear before beginning his left turn. Kilpatrick v. Alliance Casualty and Reinsurance Co., 95-17 (La. App.3d Cir.7/5/95), 663 So.2d 62.
In the present case, it is undisputed that Daniel collided with plaintiff's log truck on the left side, damaging the lower portion of the driver-side door. Trooper Brister testified Daniel's vehicle, which was estimated to have been traveling 55 mph at the time of impact, did not leave any skid marks on the highway. He placed the point of impact near the center line of the highway. Trooper Brister also testified that during his initial investigation, Daniel did not inform him that plaintiff's vehicle had traveled completely off of the roadway and then turned back across the east lane of traffic into the west lane of La. Hwy 3128. He stated he would have noted that information in his accident report. The trial court found Daniel's failure to give the trooper this version of the accident at the scene was a significant factual detail that impaired Daniel's credibility.
Based on the evidence presented and the trial court's credibility determinations, we conclude that Daniel failed to show the trial court was clearly wrong in finding that Bruce's eighteen-wheel log truck was in the eastbound travel lane of La. Hwy 3128 when Daniel attempted to pass the vehicle. The trial court's findings and conclusions are supported by the record and will not be disturbed. This assignment of error is without merit.
Expert Testimony
Daniel contends the trial court erred in disregarding the testimony of Dr. Douglas Brown, the orthopedic surgeon who initially treated plaintiff, and in relying on the opinion of Dr. Kenneth Lim, the chiropractor who first treated plaintiff fourteen months after the accident. Defendants argue that the medical evidence does not support the trial court's finding that plaintiff sustained an eighteen-month soft tissue injury.
The factfinder is not precluded from making determinations regarding the credibility of witnesses and respect should be given to those conclusions. Mosley v. Pennzoil Quaker State, 37,199 (La.App.2d Cir.7/23/03), 850 So.2d 1100. After weighing and evaluating the medical testimony, the trier of fact may accept or *302 reject the opinion expressed by the medical expert. The factfinder should evaluate the expert testimony by the same rules which are applicable to other witnesses and the trial court is not bound by expert testimony. Id. Further, the treating physician's testimony must be weighed in light of other credible evidence. "[T]he significant weight [given to the testimony of a court-appointed expert] can be less or greater depending on the qualifications or expertise of the physician, the type of examination he performs, his opportunity to observe the patient, his review of other physicians' examinations and tests and any other relevant factors." Green v. Louisiana Coca Cola Bottling Co., Ltd., 477 So.2d 904 (La.App. 4th Cir.1985), writ denied, 478 So.2d 910 (La.1985).
In a personal injury action, the plaintiff must prove by a preponderance of the evidence, that the claimed injuries resulted from the accident at issue. Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.2/22/95), 650 So.2d 757. If the medical testimony establishes that it is more probable than not that subsequent injuries were caused by the trauma suffered in the incident, the burden of proof is satisfied. A presumption of causation will aid a plaintiff in meeting this burden, if before the accident, the injured person was in good health; but, that commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be reasonable possibility of a causal connection between the accident and the disabling condition. Housley v. Cerise, 579 So.2d 973 (La.1991). To rebut this presumption, defendant must show that some other particular incident could have caused the injury in question. This is a factual issue, reviewed by an appellate court under the manifest error standard. Maranto v. Goodyear Tire & Rubber Co., supra.
In reviewing an award of general damages, the court of appeal is required to focus on the total award and not on each individual item. Richard v. Teague, 92-17 (La.App. 3rd Cir.5/4/94), 636 So.2d 1160. In the instant case, the court found that Bruce was in good health prior to the accident and had participated in manual-labor type activities and physicially demanding recreational pursuits without any difficulty.
The evidence showed that plaintiff received treatment from the following medical care providers: St. Francis Cabrini Hospital emergency room: Dr. Douglas Brown, orthopaedic surgeon; Ty James, physical therapist; and, Dr. Kenneth Lim, chiropractor.
Plaintiff's Exhibit No. 1, the certified hospital report from St. Francis Cabrini Hospital, included a medical assessment sheet. This computer-generated document described plaintiff as "a belted driver involved in a motor vehicle accident last week, now complaining of pain to the lower back radiating down legs."
Plaintiff's medical evaluation by Dr. Brown was arranged by the defendant, State Farm. Dr. Brown's deposition testimony and medical records were submitted into evidence. According to Dr. Brown, he initially treated plaintiff on May 22, 2000. Bruce complained of pain in his lower back and right groin. Plaintiff also complained of what he described as a "pins and needles" sensation in his feet and numbness behind his right leg. Dr. Brown diagnosed plaintiff's conditions as lumbar strain.
Dr. Brown testified that he injected Bruce with xylocaine and celestone. He testified he placed Bruce on other medications and referred him to the Winnifield Hospital for physical therapy. On May 23, *303 2000, Bruce was treated by Roy James at the Winn Parish Medical Center Physical Therapy Department. James' report reveals that plaintiff's physical symptoms were consistent with that of disco-genic syndrome. He noted that Bruce had decreased lumbar range of motion and displayed characteristic symptoms of pain. James advised Bruce not to sit for more than thirty minutes and to avoid bending forward.
Plaintiff returned to see Dr. Brown on July 27, 2000, complaining of headaches and chronic back pain. He also complained of tightness of his paracervical muscular (shoulder) area and neck. With regard to plaintiff's back pain, Dr. Brown opined that Bruce suffered from a possible central disc protrusion with chronic exacerbation because of prolonged sitting. Dr. Brown ordered a lumbar MRI to further evaluate plaintiff's condition.
When plaintiff returned to Dr. Brown on August 29, 2000, he was still complaining of back pain with radiating pain into his legs. Dr. Brown once again injected Bruce's back with xylocaine and celestone, this time with good and immediate results. Dr. Brown gave Bruce permission to continue working and advised him to return if he did not drastically improve. On August 14, 2000, Dr. Brown performed a nerve conduction test on Bruce, which was normal.
According to the medical records, the lumbar myelogram performed on November 9, 2000, revealed slight annular bulges at each of the lower three lumbar levels. No obvious significant disc herniation was noted.
Dr. Brown opined that although Bruce did not suffer from a ruptured disc, he had some thickening of his ligament that surrounded the nerve root. Dr. Brown further opined that Bruce was starting to get premature arthritis in his back simply because of his occupation.
Dr. Brown advised Bruce that he had three choices: live with the pain, see a chiropractor for treatment, or see a pain management specialist who would inject cortisone into his affected joints. Dr. Brown stated that he gave Bruce anti-inflamatory medicine and informed him that he had reached maximum medical improvement. Dr. Brown further testified that he did not recommend surgery on Bruce's back. He opined that Bruce had suffered a slightly torn right lumbar muscle.
Dr. Lim testified that Bruce's symptoms included pain in the left shoulder blade and neck, headaches, difficulty sleeping, lower back pain, a "catch" in his back and intermittent numbness of his feet. According to Dr. Lim, his initial examination revealed soreness and restricted movement in Bruce's shoulders and neck; however, Bruce's predominant complaint was lower back pain around the L-5 area. Dr. Lim opined that Bruce had suffered from both a thoracic and lumbar sprain.
At trial, Bruce testified that he still experienced pain when he performed certain activities. He testified he had not slept well during the course of his medical treatment, and could only sit or stand for a limited amount of time. He stated that although he continued to work out of necessity, he endured both mental and physical discomfort. Bruce also testified that he experienced fear and anxiety whenever he contemplated his inability to continue his log trucking business. Bruce's mother also testified at trial as to the physical limitations her son had experienced since the accident.
The trial court reasoned that based upon plaintiff's age and prior medical history, his back pain could not have been caused solely by the usual wear and tear of driving *304 an eighteen-wheel truck. The court concluded that Bruce's back pain was directly related to the injury he received as a result of the motor vehicle collision, although the injury may have been exacerbated by his profession. The court found that the objective tests performed by Dr. Brown substantiated Bruce's claim that he suffered a lumbar spine injury. The trial court further found that Bruce was a credible] witness and his complaints were consistent with the type of injury he had sustained in the accident.
The record supports the trial court's finding that plaintiff was faced with the dilemma of having to operate his own business and also obtain medical treatment. Thus, Bruce continued to work while the nature of his business exacerbated his medical condition. He proceeded to some regular physical therapy at the hospital and also sought relief from a chiropractor. Dr. Lim treated Bruce over a course of time and felt he had obtained 90% improvement in his physical condition. The trial court accepted Dr. Lim's opinion that Bruce was not completely restored to normal health and continued to suffer residual permanent injury. In sum, the court found that the medical evidence presented established that because of Bruce's physical condition he would continue to have some pain in the future.
After a thorough review of this record, including the totality of the medical evidence presented, we cannot say the trial court was clearly wrong in its findings with regard to the plaintiff's medical condition. The record contains sufficient evidence to support the trial court's conclusion that Bruce was injured in the accident and continued to experience symptoms from that injury more than seventeen months later. Therefore, this assignment of error is without merit.
Medical Expenses
The defendants contend the trial court erred in awarding Bruce medical expenses incurred for his chiropractic treatment with Dr. Lim.
A plaintiff may recover past medical expenses that he incurs as a result of an injury due to the fault of another. To recover medical expenses, the plaintiff must prove that, more probably than not, the medical treatment was necessitated by the accident. Brandao v. Wal-Mart Stores, Inc., 35,368 (La.App.2d Cir.12/19/01), 803 So.2d 1039, writ denied, 02-0493 (La.4/26/02), 814 So.2d 558; Collins v. Shelter Mutual Insurance Company, 36,528 (La.App.2d Cir.12/11/02), 833 So.2d 1166.
The trial court awarded past medical expenses in the amount of $2,735.50 for chiropractic treatment by Dr. Lim from June 15, 2001 through September, 2001. In accordance with Dr. Brown's recommendation, Bruce sought relief for his pain through treatment with Dr. Lim. Dr. Lim testified that at Bruce's first visit on June 15, 2001, he informed him of the automobile accident of April 27, 2000 and that he previously had been under Dr. Brown's care. Bruce initially complained that he had been experiencing constant dull pain in his thoracic spine and left shoulder for a couple of weeks and that bending and twisting caused sharp pain in that area. Dr. Lim also testified that Bruce reported he had been suffering with what he described as "dull" neck pain, temporal and frontal headaches and intermittent numbness in his right leg and foot since the accident.
Dr. Lim testified he performed several orthopaedic tests and that over the course of the next couple of months, he treated Bruce by performing various types of physical therapy including non-invasive Chinese medicines. Dr. Lim testified that *305 Bruce's chiropractic treatment was necessitated by the April 27, 2000 motor vehicle accident.
Bruce demonstrated, through medical testimony, that more probably than not, the subsequent medical treatment by the chiropractor was necessitated by the trauma suffered in the accident. See Gladney v. May, 29,373 (La.App.2d Cir.5/7/97), 697 So.2d 1022. Therefore, based on the expert testimony and medical evidence contained in the record, we conclude that the trial court reasonably found that the symptoms Bruce complained of, and for which he was treated by the chiropractor, resulted from the April 27, 2000 motor vehicle accident. Accordingly, the trial court did not err in awarding past medical expenses in the amount of $2,735.50 for chiropractic treatment by Dr. Lim from June 15, 2001 through September, 2001. This assignment of error is without merit.
Property Damage
The defendant contends the trial court erred in awarding plaintiff a monetary amount for property damages.
The evidence reveals that plaintiff worked as an independent contractor who owned his own log truck. Plaintiff diligently maintained and serviced his eighteen-wheel truck prior to the collision because his truck was used as his sole source of income. The evidence also reveals that plaintiff had excellent knowledge of the mechanical repairs necessary to maintain a serviceable log truck. He performed the preventive maintenance work to his truck because he was aware of the random inspections by the DOTD and the penalties for non-compliance. He depended on Dunn Diesel Repair to perform all major and extraordinary repairs to his truck. Plaintiff had a close relationship with the diesel mechanic at Dunn Diesel Repair and assisted the mechanic in performing many of the repairs to the truck.
The trial court concluded that Bruce's log truck was in excellent condition prior to the collision and the impact of the collision had caused extensive damage to the truck. The court found that Daniel was traveling approximately 55 miles per hour at the time of the impact. Although the court considered the testimony of Michael England, a State Farm claims adjuster who had reviewed the repairs along with Bruce and his diesel mechanic, the court noted that England's testimony was greatly diminished by his lack of experience in repairing and maintaining large trucks. We find that the trial court's property damage award is supported by the evidence presented at trial. Therefore, after a thorough review of this record, we cannot say that the trial court was clearly wrong in finding that Bruce was entitled to an additional award in the amount of $5,940.58 for property damage. This assignment of error is without merit.
Lost Wages
The defendants contend the trial court erred in awarding plaintiff $5,512.50 for lost wages.
In the assessment of damages in cases of offenses, quasi offenses and quasi contracts, much discretion must be left to the judge or jury. LSA-C.C. art. 2324.1. Lost earnings need not be proven in every case with mathematical certainty; however, the law requires such proof as reasonably establishes the claim. This proof may consist of the plaintiff's own testimony. Fergins v. Caddo Parish School Bd., 31,729 (La.App.2d Cir. 3/31/99), 736 So.2d 943, 946-47; Maynor v. Vosburg, 25,922 (La.App.2d Cir.11/28/94), 648 So.2d 411, 421.
The plaintiff has the burden of proving he suffered a loss of income. Accordingly, he must prove the time he missed work due to the accident. Boyette *306 v. United Services Auto. Ass'n, XXXX-XXXX (La.4/3/01), 783 So.2d 1276.
In the present case, the trial court noted the parties had stipulated that fourteen days of down time in the total amount of $6,578.24 had been paid to Bruce by State Farm for time lost during the initial repairs to his log truck. The court found that Bruce had lost an additional nine days of down time for subsequent repairs. It concluded that he normally would have carried an average of 3.5 loads per day; therefore, he had lost 31.5 loads because of the total down time of his truck. The court accepted Bruce's testimony that he earned approximately $175 per load, and awarded him an additional $5,512.50 for loss of income.
This Court consistently applies the manifest error standard to our review of the fact finder's conclusions with respect to lost wages. Renard v. McCloud, 35,633 (La.App.2d Cir.5/8/02), 818 So.2d 279. In the present case, as noted above, the trial court reviewed the evidence and implicitly found that Bruce was a credible witness. We have examined the record in its entirety and cannot say that this conclusion was manifestly erroneous or clearly wrong. Defendants had an opportunity to contradict Bruce's testimony, but failed to do so. Thus, we find that Bruce's testimony alone was sufficient to support the trial court's award for lost wages. This assignment of error is without merit.
Hedonic Damages
Defendants contend the trial court erred in delineating a separate award for hedonic damages, in addition to the award for pain and suffering. They argue that an award for hedonic damages is excessive and duplicates the pain and suffering award.
Loss of enjoyment of life is a compensable element of general damages, which refers to those damages that may not be fixed with any degree of pecuniary exactitude. Foster v. Trafalgar House Oil & Gas, 603 So.2d 284 (La.App. 2d Cir. 1992); Stevenson v. La. Patient's Compensation Fund, 97-709 (La.App. 5th Cir.4/9/98), 710 So.2d 1178. A plaintiff is entitled to recover damages for loss of enjoyment of life if he proves that his lifestyle was detrimentally altered or if he was forced to give up activities because of his injury. Day v. Ouachita Parish School Board, 35,831 (La.App.2d Cir.8/8/02), 823 So.2d 1039. We therefore reject defendant's argument.
In the present case, the evidence shows that there has been a significant, permanent change in Bruce's lumbar spine. The trial court emphasized in its "Reasons For Judgment" that Bruce was in the prime of his life when this accident occurred. The evidence establishes that Bruce suffered from difficulty sleeping during the course of his medical treatment for his injury and could sit only for a short time without experiencing pain. He continued to work out of necessity, despite recurring pain and discomfort. He experienced fear and anxiety whenever he contemplated his inability to continue operating his log truck business. As a result of the accident, Bruce can no longer enjoy horseback riding, softball or other physical activities that he enjoyed prior to the accident.
Based upon this record, we do not find that the trial court's award of $7,500 for hedonic damages is either excessive or duplicative. We agree that loss of enjoyment of life is a compensable element of damages in this case. Accordingly, we find no abuse of the trial court's broad discretion in assessing damages.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed. Costs of this *307 appeal are assessed to the defendants, State Farm Insurance Company, Daniel Butane Gas Company, Inc. and Charles Daniel.
AFFIRMED.