I!WILLIAMS, Judge.
The claimant, John Mosley, Sr., appeals a judgment in favor of the employer, Pennzoil Quaker State Company, finding that claimant was not entitled to supplemental earnings benefits (SEB) because a job within his physical capabilities was available. For the following reasons, we affirm.
FACTS
In a prior appeal involving these parties, Mosley v. Pennzoil Quaker State, 37,199 (La.App. 2d Cir.7/23/03), 850 So.2d 1100, this court described the factual and procedural background of this case as follows:
On or about April 10, 1995, the claimant, John Mosley, Sr., injured his lower back while loading and unloading cases of oil during his employment as a forklift operator for Pennzoil. In June 1995, Mosley was examined by Dr. Carl Goodman, an orthopedic surgeon, who concluded that Mosley had a herniated disc at L4-5 and required surgery. In July 1995, Mosley began treatment with Dr. David Cavanaugh, a neurosurgeon. Dr. Cavanaugh attempted conservative treatment of Mosley until February 4, 1998, when he performed lower-back surgery. Mosley’s surgery consisted of a micro-surgical bilateral laminotomy and diskectomy at the L4-5 and L5-S1 discs. These procedures involved the complete removal of the disc material at both disc levels....
In October 1998, a post-surgical MRI was conducted. According to Dr. Cava-naugh, Mosley was recovering satisfactorily and there was no evidence of disc herniation or stenosis at L4 or L5. In August 1999, Mosley returned to work, in the position of inspector/packer, with various work restrictions in accordance with Dr. Cavanaugh’s orders. Pennzoil accommodated Mosley’s physical condition as requested by Dr. Cavanaugh by eliminating certain functions of Mosley’s position. Complaining of continuous and persistent pain, Mosley did not perform the required work and subsequently sought treatment from another physician, Dr. Pierce Nunley, an orthopedic surgeon. In December 2000, Dr. Nun-ley ordered another MRI of Mosley’s lower back. Based upon this MRI, Dr. Nunley concluded that Mosley was suffering from a recurrent disc herniation at L4-5 and recommended that Mosley undergo a decompression and spinal-fusion surgery. In response to the recommendation, Pennzoil had Mosley re-examined by Dr. Goodman, who found no evidence of a recurrent herniation, but noted that the MRI | ¡.showed the existence of scar tissue from the previous surgery.
Because of the conflicting interpretations of the MRIs, Pennzoil filed a formal request for Mosley to submit to an independent medical examination (“IME”), pursuant to LSA-R.S. 23:1123 and 1317.1. The workers’ compensation judge (“WCJ”) appointed Dr. Robert E. Holladay, IV, also an orthopedic surgeon, to perform the IME. In December 2001, Dr. Holladay examined Mosley. He opined that Mosley had not suffered a recurrent disc herniation and refused to recommend surgery.
Subsequently, the WCJ ... denied the claimant’s request for decompression and fusion surgery and dismissed his claim.
This court affirmed the WCJ’s denial of a second surgery. Mosley, supra.
In September 2002, Pennzoil filed a disputed claim form alleging that claimant was physically capable of performing the inspector/packer job but refused to work, that the job paid more than his average weekly wage at the time of injury and that *330 Pennzoil sought to employ claimant as an inspector/packer or terminate compensation benefits. Claimant filed an answer denying that he was physically capable of performing the job and alleged that he needed additional surgery.
In February 2003, Pennzoil retained Kenneth Brister, a vocational rehabilitation consultant, to prepare an assessment of the inspector/packer job. In preparing the job analysis report, Brister visited Pennzoil’s Shreveport plant, spoke with assistant plant manager David Brook and reviewed videotape of other workers performing the inspector/packer job. Brister presented the completed job assessment report to Brook for his approval and then submitted the report to Dr. Nunley in May 2003. Dr. Nunley signed the report and placed a check mark next to the statement: “I have reviewed this job analysis and believe this job falls within the physical capabilities of this individual.”
lain June 2003, Brister mailed the job report to claimant’s attorney with a letter stating that the job was available and had been approved by Dr. Nunley. By letter dated June 19, 2003, the claimant’s attorney acknowledged receipt of the report. Subsequently, Brister met with the claimant and his attorney to discuss the job description. At the meeting, claimant expressed his belief that he could not physically perform the job.
Prior to trial, Pennzoil filed a motion in limine to exclude any evidence regarding claimant’s need for additional back surgery on the grounds that his request for such surgery had been denied in a final judgment and was no longer an issue in this matter. Claimant filed a motion in limine to exclude any evidence of a modified inspector/packer job that did not exist when claimant last attempted to work. The WCJ granted Pennzoil’s motion and denied that of the claimant, who filed a writ application seeking review of the ruling. This court denied the writ. Mosley v. Westland Oil Co., 38,513 (La.App. 2d Cir.12/16/03).
After a trial, the WCJ issued oral reasons for judgment finding that the inspector/packer job was approved by claimant’s treating physician as within his physical abilities, that the job was available and paid a wage greater than his pay at the time of injury and that claimant was notified of the job’s availability on June 19, 2003, when his attorney received the report from Brister. The WCJ rendered judgment finding that claimant was not entitled to receive SEB as of the date he was notified of the available job through the date of the Pennzoil plant closing. Claimant appeals the judgment.
^DISCUSSION
The claimant contends the WCJ erred in finding that he was not entitled to SEB as of June 19, 2003. Claimant argues that the evidence presented shows that his continuing pain and physical limitations prevented him from performing the inspector/packer job and that Pennzoil failed to make a suitable job available.
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact-finder’s conclusion was reasonable. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733; Stobart v. State, 617 So.2d 880 (La.1993).
The purpose of SEB is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La.1993). To qualify for SEB, a claimant is required *331 to prove by a preponderance of evidence that a work-related injury resulted in the inability to earn 90% or more of his average pre-injury wage. LSA-R.S. 23:1221(3)(a); Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Nelson v. City of Grambling, 31,303 (La.App. 2d Cir.12/9/98), 722 So.2d 358. Once the claimant makes this showing, the burden shifts to the employer, who must prove by a preponderance of evidence that the claimant is physically able to perform a certain job and that the job was offered to the claimant or was available in his or the employer’s community or reasonable geographic region. LSA-R.S. 23:1221(3)(c)(i); Banks, supra; Todd v. Security Industrial Insurance, 33,233 (La.App. 2d Cir.5/15/00), 759 So.2d 1082. An employer can discharge its burden by establishing (1) the existence of a suitable job within claimant’s physical capabilities, (2) the amount of wages an employee with claimant’s experience and training can expect to earn in that job, and (3) an actual position available for that particular job at the time the claimant received notification of the job’s existence. Banks, supra; Turner v. Sunbelt Manufacturing, 32,692 (La.App. 2d Cir.6/14/00), 763 So.2d 770.
In the present case, the record shows that after his work injury and back surgery claimant was unable to perform his prior job of forklift operator in the shipping department. In August 1999, claimant returned to work and attempted to do the inspector/packer job, but his pain increased and he sought treatment with Dr. Nunley, who restricted him to sedentary work. However, there were no such jobs available at the Pennzoil plant. Thus, the evidence presented demonstrated that plaintiff was unable to perform his previous job or earn 90% of his pre-injury wage given his physical limitations.
Following the denial of claimant’s request for additional back surgery, Pennzoil filed a disputed claim alleging that a modification in the inspector/packer job since claimant’s last attempt to work meant that he could physically perform the job. At trial, Pennzoil presented the testimony of David Brook, a former assistant plant manager, who explained that an inspector/packer in the “blow molding” department primarily worked at | (¡either the Jo-mar or Beckham machine, both of which produce empty plastic bottles for motor oil. Brook stated that an inspector/packer monitored two conveyor belts to make sure the moving bottles were in the correct position for filling and packing on pallets, applied strapping to secure the bottles and inspected bottles for the correct size and shape specifications.
Brook testified that when claimant last worked on the Beckham line, an inspector/packer was required to physically pick up a number of bottles from the conveyor, then turn, and load them onto a cardboard sheet behind him. Brook stated that in April 2002, the Beckham line was modified so that the inspector/packer no longer needed to physically pick up the bottles, which instead fell into a large box beside the conveyor. Brook testified that a box would be filled in approximately one to two hours, so that four to eight boxes could be completed in an eight-hour shift. While the bottles were collecting in the box, the inspector/packer was required to do various other duties, including sweeping or mopping the floor, inspecting the bottles by measuring random samples with a caliper, recording the data and using a pneumatic strapping machine weighing approximately 12 to 15 pounds to tighten plastic bands around a full box. Brook testified that claimant would be required to bend down and place the strap under a box a maximum of eight times during a shift and that he would be free to sit, stand or move *332 around while monitoring the conveyors. Brook stated that to accommodate claimant’s physical limitations he would not be required to do some of the job duties, such as operating a forklift, assembling boxes or climbing stairs. Brook testified that Bris-ter’s job analysis accurately described the various 17duties of the inspector/packer job, but acknowledged that the report did not state the specific accommodations that would be made for claimant. Pennzoil introduced into evidence videotapes of workers performing the inspector/packer job before and after the Beckham line was modified.
Kenneth Brister was accepted as an expert in the field of vocational rehabilitation. Brister testified that his preparation for the job analysis included visiting the work site, discussing the inspector/packer job with Brook, observing workers perform the job for approximately 30 to 45 minutes and viewing a videotape of workers performing the same duties he had personally observed. Brister stated that based on this information the report estimated a range of time in which an inspector/packer would perform certain work activities, such as standing, sitting, bending, lifting or reaching, during an eight-hour shift. The report stated an inspector/packer was required to stand for approximately 3-4 hours, walk for 2-3 hours and sit for 1-2 hours during an eight-hour shift. The report described the frequency of bending, pulling and pushing as “occasionally,” meaning that the worker needed to bend, pull or push as much as 33% of the time. Brister testified that Pennzoil provided information indicating the inspector/packer job paid $10.25 per hour.
Dr. Pierce Nunley was accepted as an expert in orthopedic spine surgery. Dr. Nunley testified that he began treating claimant in November 2000 with complaints of low back pain and leg pain. Dr. Nunley stated that based on the description of the inspector/packer job duties in March 2001, he had opined that claimant was unable to perform that job for eight hours IsPer day, 40 hours per week. However, at the time of trial Dr. Nunley opined that although claimant would “likely” feel some pain while working, he is able to do a “light duty to a light medium job” that would allow him to change positions periodically. Dr. Nunley testified that he had personally reviewed the job analysis dated May 20, 2003, and had signed the document indicating his opinion that claimant is physically capable of performing the inspector/packer job as described. Dr. Nun-ley also reviewed an August 2003 functional capacity evaluation. After viewing the videotape of workers performing the inspector/packer job on the modified Beck-ham line, Dr. Nunley agreed that the job depicted was a light duty position which did not involve any job function that claimant was incapable of performing.
The claimant testified that after his back surgery in 1998 he remained off work for a period of time undergoing rehabilitation and trying to rebuild his strength. Claimant stated that he returned to work and tried to do the inspector/packer job even though he was still feeling pain in his lower back extending to his right hip and leg. Claimant testified that during an eight-hour shift approximately 30-40% of his time involved twisting and bending while standing to take bottles from the conveyor, to pick up fallen bottles from the floor and to clean the machines at the end of the shift. Claimant stated that performing the inspector/packer job caused increased pain in his lower back and numbness in his legs and feet. Claimant testified that he was not physically capable of performing the job and that no one from Pennzoil had offered him a modified job. Claimant stated that even after reading the job description prepared by Brister and viewing the videotape he |flstill believed he could not perform the job despite *333 the modification because most of the physical requirements of the job remained.
The depositions of Drs. David Cava-naugh and Robert Holladay were introduced into evidence. Both physicians testified that after watching the video of workers doing the inspector/packer job they would characterize that job as light duty. Dr. Cavanaugh opined that claimant should be able to do the job if the functions of lifting pallets and climbing stairs were eliminated and if there was an arrangement for him to sit comfortably. Dr. Holladay opined that claimant was physically capable of performing all duties of the inspector/packer job and that he would have adequate opportunity to change body position during an eight-hour shift.
The record shows that each of the medical experts opined that the inspector/packer position described in the job analysis and depicted on the video was a light duty job and that claimant was physically able to perform the required duties with restrictions on lifting, climbing and with the opportunity to change body positions. Brook testified that Pennzoil accommodated claimant by removing the job requirements of driving a forklift, climbing stairs and by providing him with a stool on which to sit.
Based upon this record, we cannot say the WCJ was clearly wrong in finding that Pennzoil proved by a preponderance of the evidence that a suitable job existed within claimant’s physical capabilities, that the job paid a wage at least equal to his pre-injury wage and that a position was available at the time claimant was notified of the job. Thus, in order to obtain SEB, the claimant was required to produce clear and convincing evidence that he 1 inwas unable to perform the available employment solely as a consequence of substantial pain. LSA-R.S. 23:1221(3)(c)(ii); Baker v. Libbey Glass, Inc., 32,748 (La.App. 2d Cir.5/10/00), 759 So.2d 1007; Todd, supra.
The claimant testified that he was unable to perform the duties of the inspector/packer job because of his physical limitations caused by continuing lower back and leg pain. However, Drs. Nunley and Holladay each opined that although claimant would likely feel some pain while working, any such pain would not prevent claimant from performing the inspector/packer job. In addition, Dr. Holladay suggested that regular exercise and a return to work would be more beneficial for claimant than inactivity.
After reviewing the record, we must conclude that claimant failed to produce clear and convincing evidence of his inability to perform the available work solely as a consequence of substantial pain. Consequently, the WCJ did not err in determining that claimant was not entitled to receive SEB from the date of June 19, 2003. The assignments of error lack merit.
CONCLUSION
For the foregoing reasons, the judgment of the Office of Workers’ Compensation is affirmed. Costs of this appeal are assessed to the appellant, John Mosley, Sr.
AFFIRMED.