Judgment rendered July 17, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,739-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JOHN P. DICKERSON, JR.                          Plaintiff-Appellant

versus

RPM PIZZA, LLC, DBA                             Defendants-Appellees
DOMINO'S PIZZA, ALLSTATE
PROPERTY AND CASUALTY
INSURANCE COMPANY, AND
WILLIAM M. EALY, JR.

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 627325

Honorable Brady D. O'Callaghan, Judge

* * * * *

PATRICK R. JACKSON, APLC            Counsel for Appellant
By: Patrick Richmond Jackson

NALLEY AND DEW, APLC                Counsel for Appellee,
By: George J. Nalley, Jr.           RPM Pizza, LLC

LAW OFFICE OF CARL R. DANNA         Counsel for Appellees,
By: Cynthia Dimple Schwartz         Allstate Property and
                                    Casualty Insurance
                                    Company and William
                                    M. Ealy, Jr.

* * * * *

Before STONE, THOMPSON, and ROBINSON, JJ.

**ROBINSON, J.**

John Dickerson, Jr., who was involved in a vehicular accident with a left-turning motorist, appeals a judgment granting a motion for summary judgment and dismissing his lawsuit. For the following reasons, we reverse the judgment and remand this matter for further proceedings.

## FACTS

At around 9:45 p.m. on New Year's Eve of 2019, Dickerson was proceeding northbound on Union Avenue in Shreveport, Louisiana, while riding his 2008 Roketa 250 motorbike. Meanwhile, William Ealy, Jr., was driving his 2005 Kia Sedona minivan southbound on Union Avenue. Ealy was delivering pizzas for his employer, RPM Pizza, LLC.

When Ealy attempted to make a left turn onto Clanton Street, he turned in front of Dickerson, which caused Dickerson's motorbike to crash into the right side of Ealy's minivan.

On November 25, 2020, Dickerson filed suit against Ealy; Ealy's automobile liability insurer, Allstate Property and Casualty Insurance Company; and Ealy's employer, RPM Pizza, LLC, for the damages that he allegedly sustained in the accident.

On October 3, 2022, RPM filed a motion for summary judgment in which it argued that Dickerson could not prevail against RPM because the accident was caused solely by the actions or inactions of Dickerson. RPM maintained that Ealy did not breach his duty to Dickerson or, in the alternative, was not the proximate cause of Dickerson's injuries. RPM asserted that Dickerson rode his motorbike while under the influence of THC and methamphetamines. RPM further asserted that Dickerson did not

have a driver's license, was legally blind, had been warned multiple times not to drive vehicles on the road, had caused other motor vehicle accidents, had no insurance, and was not wearing a helmet. RPM added that Dickerson, who had been diagnosed with astigmatism and nystagmus early in his life, refused to wear prescription glasses which would help his vision.

RPM maintained that Ealy did not see any headlights indicating an approaching vehicle before making his turn, and when he exited his vehicle following the accident, he noted that the motorbike's headlight was not on, which was confirmed by the investigating officer.

In support of its motion, RPM relied upon *Wooten v. Bartholomew*, 556 So. 2d 75 (La. App. 4 Cir. 1989), *writ denied*, 560 So. 2d 23 (La. 1990). Wooten's motorcycle struck a car driven by Bartholemew, a deputy sheriff on patrol, as Bartholomew made a left turn. The accident occurred at night. Bartholomew testified that he stopped and signaled to make a left turn, and when oncoming traffic cleared, he made his turn as he saw no other oncoming traffic. He never noticed the motorcycle until he heard the squealing of brakes. He testified that the motorcycle did not have lights.

The appellate court noted that the trial court committed an error of law in allocating the burden of proof to Wooten. Nevertheless, the court affirmed the judgment dismissing Wooten's lawsuit. It noted that the record supported the conclusion that Wooten was speeding on a black motorcycle that was without lights while on a highway that was not well lighted. The motorcycle, which was going 18-22 miles per hour above the speed limit, left 70 feet of skid marks. The court concluded that Bartholomew met his duty of properly observing that his left turn could be made safely, and his

2

turn would have been made safely except that Wooten could not be seen as he approached without lights at an excessive rate of speed.

RPM argued that similar to the motorist in *Wooten*, Ealy did not breach his duty to Dickerson because he looked around and did not see an approaching headlight as he made his left turn. RPM further argued that even if Ealy had breached his duty of care, RPM was still entitled to summary judgment because it was Dickerson's multiple acts of negligence which were the sole proximate cause of the accident.

In support of its motion, RPM submitted deposition excerpts from Dickerson, his father, his ophthalmologist, Ealy, and the investigating law enforcement officer.

Dickerson testified that there was still light outside at the time of the accident. He claimed he was driving at the speed limit. When he was about four car lengths away, he saw that Ealy's van was stopped with its blinker on, so he knew that Ealy was about to make a left turn.

Dickerson did not wear eyeglasses that had been prescribed for him. He could see shapes from about four car lengths away, and while he did not know it was a van waiting to turn, he knew it was a vehicle. Dickerson acknowledged that it was possible that he tested positive for marijuana and amphetamines after the accident because he sometimes used those substances.

Dickerson testified that he had been involved in at least three other accidents while driving. His motorcycle ran into the rear of a truck on one occasion. He failed to yield to a vehicle on another occasion. He was in a

third accident when he turned on what he claimed was an arrow, but was still ticketed.

Dickerson has received six to seven tickets for driving without a license. He acknowledged that despite his father, grandfather, and the police telling him not to do it, he has driven automobiles and motorcycles on public roads. When he was asked why he continued to drive without a license despite warnings not to, he answered, "Why not? Why should I do everything someone tells me not to do?"

Dickerson's father testified that his son has had severe vision problems since he was born. He had three surgeries on his eye muscles to slow the movement of his eyes. He has been declared legally blind and receives social security disability benefits. His father recalled that Dickerson failed the vision portion of his driver's license test when he was 16 or 17 years old.

Dr. Alan Richards diagnosed Dickerson as having nystagmus when he was a toddler. He performed surgery in 1995 on his eye muscles. Dr. Richards also testified that Dickerson has astigmatism in both eyes. His vision, which Dr. Richards characterized as reduced, measures 20/80 in each eye without glasses. Louisiana defines legal blindness by corrected vision. Dr. Richards expected Dickerson's vision to be worse at night. He would probably recommend that Dickerson not drive at all at night, with or without his glasses, as he would be very visually disabled at night.

Ealy testified that he looked to the front and to the rear before making his left turn. He did not see the motorbike, and he had no idea what had happened when the impact occurred. He did not see any light from the

motorbike before the collision, and he did not see a headlight on when he looked at the motorbike on the ground.

Corporal Dirk Morris testified that he spoke with Dickerson's father at the hospital after the accident. The father told Morris that Dickerson was legally blind, could not get a driver's license, and had just recently acquired the motorbike. Other family members told him that Dickerson was blind and had trouble seeing. He did not interview Dickerson. Ealy told him that Dickerson's headlight was out. Morris's conclusion was that the accident was caused by poor lighting at the scene and a driver whose vision was impaired to the extent that it impacted his ability to drive safely.

Ealy and Allstate filed a motion to adopt and join RPM's motion for summary judgment.

Dickerson argued in his memorandum in opposition to the motion for summary judgment that there was a genuine issue of material fact concerning whether the motorbike's headlight was on at the time of the collision. He submitted excerpts from his own deposition as well as from the depositions of Ealy, Dr. Richards, and a witness.

Christopher Spradling testified that the motorbike's light was on when Dickerson drove out of a parking lot. Dickerson testified that his headlight was turned on. He further testified that he was four car lengths from Ealy when he noticed that Ealy's vehicle had stopped and that his blinker was on. Ealy turned in front of him when he was a car length away. Dickerson asserted that Ealy "floored" it to turn and try to beat him.

Ealy testified that he did not see the motorbike before he started his left turn, and he knew the motorbike's headlight was not on because he did not see it on when he looked at the motorbike following the wreck.

Dr. Richards testified that Dickerson's 20/80 vision without glasses was not considered legally blind in Louisiana because in Louisiana it is measured by corrected vision.

RPM Pizza argued in its reply memorandum that even in a comparative fault scenario, it was immune from liability under La. R.S. 9:2798.4 because Dickerson tested positive for THC and amphetamines while operating a motor vehicle, and there was no genuine issue of material fact that Dickerson was 25% or more at fault for the accident. Attached to the reply memorandum was Dickerson's medical record showing his toxicology screen results.

The trial court granted the motion for summary judgment. The court found *Wooten v. Bartholomew* to be persuasive, noting that Dickerson was in a worse position than Wooten, who at least attempted to stop and prevent his collision with the left-turning motorist. There was no evidence that Dickerson, who was unlicensed and had impaired vision, made any attempt to slow or prevent crashing into Ealy's minivan. The court concluded that given the uncontroverted evidence about Dickerson's limited vision, there was no genuine issue of material fact.

Dickerson filed a motion for new trial in which he argued that the fact that he had limited vision was not sufficient to entitle defendants to summary judgment.

6

The motion for new trial was denied. The trial court stated in its written ruling that it had considered the possibility that a jury could have found comparative fault based on the undisputed facts. However, based upon those undisputed facts, particularly Dickerson's vision problems, his inability to keep a reasonable lookout on the road, and the position of Ealy's vehicle and where it was struck, the court concluded that "no amount of [Dickerson's] injury could not have been prevented." Finally, the court stated that it found no genuine issue of material fact regarding causation. The court added that even if such a dispute existed, "the uncontested facts leave no issue about fault, as the court cannot find any basis for the contention that plaintiff colliding with defendant was not fully avoidable by ordinary care."

Dickerson has appealed the judgment granting the motion for summary judgment.

**DISCUSSION**

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The summary judgment article further states:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish

the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La. C.C.P. art. 966(D)(1).

A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Maggio v. Parker*, 17-1112 (La. 6/27/18), 250 So. 3d 874.

A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880.

The standard negligence analysis used in determining whether to impose liability under La. C.C. art. 2315 is the duty/risk analysis. *Mathieu v. Imperial Toy Corp.*, 94-0952 (La. 11/30/94), 646 So. 2d 318. In order for liability to attach under a duty/risk analysis, a plaintiff must prove that: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Id.*

However, because a left turn is one of the most dangerous maneuvers for a driver to execute, there is a presumption of negligence on a left-turning motorist involved in a motor vehicle accident. *Green v. Nunley*, 42,343 (La. App. 2 Cir. 8/15/07), 963 So. 2d 486. This is in accord with the statutory duty found in La. R.S. 32:122. *Green v. Nunley*, *supra*. La. R.S. 32:122

8

provides that "[t]he driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard."

Before attempting a left turn, a motorist should ascertain whether it can be completed safely. *Theriot v. Lasseigne*, 93-2661 (La. 7/5/94), 640 So. 2d 1305; *Baker v. State Farm Mut. Auto. Ins. Co.*, 49,468 (La. App. 2 Cir. 1/21/15), 162 So. 3d 405. This duty includes properly signaling an intention to turn left and keeping a proper lookout for both oncoming and overtaking traffic in order to ascertain that the left turn can be made with reasonable safety. *Baker v. State Farm Mut. Auto. Ins. Co.*, *supra*.

The burden is on the left-turning motorist to explain how the accident occurred and establish that he was not at fault. *Smart v. Calhoun*, 49,943 (La. App. 2 Cir. 7/29/15), 174 So. 3d 168. Despite the presumption of negligence attributed to a left-turning driver, a favored motorist can still be assessed with comparative fault if his substandard conduct contributed to the cause of the accident. *Upchurch v. State ex rel. Louisiana Dept. of Transp. and Development*, 48,354 (La. App. 2 Cir. 8/7/13), 123 So. 3d 228, *writ denied*, 13-2153 (La. 11/22/13), 126 So. 3d 489.

A left-turning motorist can be held free of negligence when "the sole proximate cause of the accident was excessive speed, lack of lookout, or lack of control on the part of the approaching vehicle in failing to observe a reasonably-signaled left turn intent and continuing to approach without attempting to bring the vehicle under control." *Dakmak v. Baton Rouge City Police Dept.*, 2012-1468, p. 5 (La. App. 1 Cir. 9/4/14), 153 So. 3d 498, 504.

At the very least, a genuine issue of material fact remains concerning whether the headlight on Dickerson's motorbike was on at the time of the collision. Thus, whether Ealy has discharged his burden as a left-turning motorist of explaining how the accident occurred and establishing that he was not at fault cannot be determined without weighing evidence and assessing credibility. Moreover, there is a genuine issue of material fact concerning whether actions taken or not taken by Dickerson just prior to the accident were the proximate cause of the accident. Those considerations are more appropriate for a fault determination following a trial on the merits.

As noted earlier, the trial court relied on *Wooten v. Bartholomew*, *supra*, when granting the summary judgment. That case can be easily distinguished. Following a trial on the merits, the court determined that the headlight on Wooten's motorcycle was not on at the time of the accident. Bartholomew testified that it was not on, and Wooten admitted that the motorcycle had an electrical problem which affected the headlight. Either Wooten did not dispute that his lights were not on, or the trial court made a credibility determination. In the matter before us, Dickerson contends that his motorbike's light was on at the time of the accident. It is improper to weigh the evidence or to determine the truth of the matter when considering a motion for summary judgment. *Bourn v. Federated Mutual Insurance Company*, 54,977 (La. App. 2 Cir. 4/5/23), 361 So. 3d 538.

Finally, in its reply memorandum, RPM argued that it is immune from liability under La. R.S. 9:2798.4, which states:

> A. . . . [No] person shall be liable for damages, including those available under Civil Code Article 2315.1 or 2315.2, for injury, death, or loss of the operator of a motor vehicle, aircraft, watercraft, or vessel who:

10

. . . . .

(2) Was operating a motor vehicle, aircraft, watercraft, or vessel while he was under the influence of any controlled dangerous substance described in R.S. 14:98(A)(1)(c) or R.S. 40:964.

B. The provisions of this Section shall not apply unless:
(1) The operator is found to be in excess of twenty-five percent negligent as a result of a blood alcohol concentration in excess of the limits provided in R.S. 14:98(A)(1)(b), or the operator is found to be in excess of twenty-five percent negligent as a result of being under the influence of a controlled dangerous substance described in R.S. 14:98(A)(1)(c); and
(2) This negligence was a contributing factor causing the damage.

This argument was not addressed in the trial court's ruling on the motion for summary judgment or in RPM's appeal brief to this court. Nevertheless, we have considered it and determine that even assuming that Dickerson was under the influence of a controlled dangerous substance, a genuine issue of material fact remains regarding whether Dickerson could be found 25% or more at fault, if at all, for the accident.

Summary judgment was improperly granted. Accordingly, we reverse the summary judgment and remand this matter to the trial court for further proceedings. Appellees are to bear the costs of this appeal.

**REVERSED and REMANDED.**

11