BROWN, Chief Judge.
11 This is an action for damages arising out of an automobile accident that left plaintiff, Miriam Stagner Upchurch, a quadriplegic. Ms. Upchurch subsequently died three years later as a result of complications arising from her injuries and her children were substituted as party plaintiffs for their mother’s survival action and their own action for damages for her wrongful death. After years of litigation, all defendants except for Automobile Club Inter-Insurance Exchange, Ms. Up-church’s uninsured motorist (“UM”) insurer, resolved all of plaintiffs’ claims against them and were dismissed from this lawsuit.[1] Following trial, the court assessed 90% fault against Ms. Upchurch, who had driven in front of oncoming traffic on Clyde Fant Parkway, and 10% fault against the driver of the other vehicle. As stipulated by the parties, the trial court awarded the UM policy limits of $50,000. Defendant, Ms. Upchurch’s UM insurer, appeals the trial court’s assessment of 10% fault against the other driver. Plaintiffs answer the appeal claiming that the trial court erred in failing to award penalties and attorney fees against the UM insurer for its failure to tender the limits of the UM policy. We affirm.

Facts and Procedural Background

This automobile accident occurred shortly after 5:00 p.m. on April 13, 2006, in Shreveport, Louisiana. On that date, plaintiff, Miriam Stagner | ¡(Upchurch, was driving east on the Shreveport-Barksdale Highway in a 2003 Mitsubishi Lancer. Clyde Fant Parkway is a divided four-lane highway that runs north and south along the Red River and under the Shreveport-Barksdale Highway Bridge. Ms. Up-church took the exit ramp off the Shreveport-Barksdale Highway to the Parkway. Ms. Upchurch intended to turn left/north onto the Parkway. To do so, she had to come to a stop and wait for southbound traffic to clear before crossing the southbound lanes to the neutral ground and then wait for northbound traffic to clear before turning left onto the northbound lanes of the Parkway.
Rishaida Rochelle Trapani was driving south on the Parkway at approximately 60 m.p.h. in a 2005 Toyota 4Runner. The posted speed limit for the area was 55 miles per hour.
Upon reaching the intersection of the exit ramp and the Parkway, Ms. Upchurch came to a stop as required by the posted stop sign. Then, Ms. Upchurch pulled out across the southbound lanes directly in front of the oncoming vehicle owned and operated by Ms. Trapani, who was unable to avoid striking the Upchurch vehicle. Both cars sustained moderate damage. Ms. Upchurch was severely injured and was left a quadriplegic. She died three years later on August 3, 2009.
The record reveals that on the date, time and place of the accident, there were several factors operating to cause greater traffic congestion than normal. Not only was there rush hour traffic, but on that day the Jimmie Davis Bridge that crossed the Red River to the south was also closed, resulting in all of the traffic crossing the Red River between the heavily | ^populated areas of south Shreveport and south Bossi *231 er (traffic normally handled by two bridges) being channeled into one location, the Shreveport-Barksdale Highway Bridge. Furthermore, the north span of the Shreveport-Barksdale bridge, which crosses directly over the Parkway, was undergoing construction. In addition, the left lane of the southbound lanes of the Parkway was closed for some distance just prior to the intersection. The construction zone ended immediately before the intersection at which point both southbound lanes were reopened for travel.
At the time of the accident, numerous cars had already lined up behind the stop sign on the exit ramp of the Shreveport-Barksdale Highway waiting to turn left onto the Parkway. In fact, traffic was so heavy that other cars were already in the median of the Parkway waiting to make the same left turn.
The original petition was filed on March 28, 2007. Miriam and her children, Amanda Upchurch Caporossi and John David Upchurch, filed suit against numerous defendants including the DOTD, City of Shreveport, several construction companies and insurance companies, and the other driver involved in the accident.
Immediately after suit was filed, Unit-rin, Ms. Trapani’s liability insurer, tendered its $100,000 policy limits and obtained a release on behalf of its insured. As noted previously, after years of litigation, all other defendants except for Automobile Club Inter-Insurance Exchange, Ms. Upchurch’s UM insurer, resolved plaintiffs’ claims against them and were dismissed from this lawsuit. Automobile Club Inter-Insurance Exchange 14took the position that Ms. Trapani was not negligent in causing the accident and therefore, they did not owe plaintiffs the policy limits of $50,000. Plaintiffs subsequently filed a second supplemental and amending pleading seeking penalties and attorney fees from the UM insurer for its failure to tender payment of the UM limits.
The parties agreed that if any fault was assessed against Ms. Trapani then the full policy limits would apply. The matter was tried as a bench trial on September 27, 2012. In a detailed written opinion issued on October 19, 2012, the trial court found that Ms. Upchurch and Ms. Trapani were both negligent in causing the accident and therefore, plaintiffs were entitled the entirety of the $50,000 policy limits of the Automobile Club Inter-Insurance Exchange’s UM policy held by Miriam Up-church. Specifically, the court found that Ms. Upchurch was 90% at fault and Ms. Trapani was 10% at fault for the accident. The court observed that the dangerous traffic conditions present on the date of the accident were enough to put a reasonably prudent driver on notice that greater care should have been used while driving through the congested area. The court found that at the time of the accident Ms. Trapani failed to uphold her duty to exercise such greater care and was instead driving too fast, being inattentive and apparently oblivious to all the traffic around her. According to the court, had Ms. Tra-pani slowed down and been more attentive to her surroundings the accident could have been mitigated or prevented. Therefore, the court found that her negligent actions also contributed to the accident. The trial court did not discuss the issue of penalties and attorney fees in its opinion, | fibut the issue was addressed in the judgment which was signed by the court on November 8, 2012, awarding plaintiffs the UM policy limits of $50,000, but denying their claim for penalties and attorney fees for arbitrary and capricious conduct by Automobile Club Inter-Insurance Exchange. It is from this judgment that the UM insurer and plaintiffs have appealed.

*232
Discussion

Apportionment of Fault

Defendant, Automobile Club Inter-Insurance Exchange, Ms. Upchurch’s UM carrier, argues that the trial court erred in failing to find that the left-turning driver, plaintiff, Miriam Stagner Upchurch, was 100% at fault for the accident and in assigning 10% fault to defendant, Rishaida Trapani, who as the driver on the favored road had the right-of-way.
Before attempting a left turn, a motorist should ascertain whether it can be completed safely. Theriot v. Lasseigne, 93-2661 (La.07/05/94), 640 So.2d 1305; Slagel v. Roberson, 37,791 (La.App.2d Cir.11/18/03), 858 So.2d 1288, 1290-1291, writ denied, 03-3508 (La.03/12/04), 869 So.2d 824. In a vehicular collision case, there is a presumption of negligence when the other party can prove that the turning motorist executed a left hand turn and crossed the center line at the time of impact. Miller v. Leonard, 588 So.2d 79 (La.1991); Slagel, supra. The burden rests on the motorist who desires to make a left turn to explain how the accident occurred and to show that he or she is free from negligence. Id. See also Mack v. Wiley, 07-2344 (La.App.1st Cir.05/02/08), 991 So.2d 479, writ denied, 08-1181 (La.09/19/08), 992 So.2d 932.
| ^Likewise, jurisprudence has established that an oncoming driver has a right to assume that the left-turning motorist will obey the law in allowing her to continue in her proper lane of travel and will yield to her right-of-way. Cyrus v. U.S. Agencies Insurance Co., 41,826 (La. App.2d Cir.03/14/07), 954 So.2d 261; Sla-gel, supra; Jones v. Lingenfelder, 537 So.2d 1275 (La.App. 2d Cir.1989), writ denied, 539 So.2d 631 (La.1989).
All motorists on Louisiana highways must drive with due regard for the traffic on the highway and have an affirmative duty not to drive faster than is reasonable and prudent under the conditions and potential hazards existing at the time. La. R.S. 32:64(A); Cyrus, supra; Slagel, supra. Thus, notwithstanding the presumption of negligence attributed to a left-turning driver, a favored motorist can still be assessed with comparative fault if her substandard conduct contributed to the cause of the accident. Id.; Terro v. Casualty Reciprocal Exchange, 93-593 (La.App.3d Cir.02/02/94), 631 So.2d 651, writ denied, 94-0522 (La.04/22/94), 637 So.2d 157.
Pursuant to Watson v. State Farm Fire & Casualty Insurance Co., 469 So.2d 967 (La.1985), the trier of fact will compare the relative fault of the parties in the assessment of liability. The amount of fault, if any, attributable to any party, and thus the apportionment of it is a question of fact to be decided by the trier of fact. Underwood v. Dunbar, 628 So.2d 211 (La.App. 2d Cir.1993), writ denied, 94-0026 (La.02/25/94), 632 So.2d 767. A trier of fact’s allocation of fault is subject to the manifest error/clearly wrong standard of review. Hebert v. Rapides Parish Police Jury, 06-2001 (La.04/11/07), 974 So.2d 635; Slagel, supra. The trier of |7fact’s findings of fact will not be disturbed unless they are manifestly erroneous or clearly wrong. Stobart v. State through Dept. of Transportation and Development, 617 So.2d 880 (La.1993). The task of the reviewing court is to assess whether the fact finder’s resolution of conflicting evidence was reasonable in light of the record as a whole. Slagel, supra.
In assessing Ms. Upchurch with 90% of the fault, the trial court concluded that her conduct in pulling out onto a busy intersection at Clyde Fant Parkway in *233 rush hour traffic while attempting to cross two southbound lanes in order to make a left turn onto the northbound lanes of the Parkway was negligent and was the predominant cause of the accident in this case. In finding that Ms. Trapani bore 10% of the fault for the accident, the trial court noted the severity of the injuries sustained by Ms. Upchurch, and while opining that perhaps the wreck was unavoidable, the damage could have been less severe had Ms. Trapani not been speeding, inattentive and “apparently completely oblivious to all the other traffic and the dangerous situation [presented by Ms. Upchurch’s ill-advised turning maneuver].”
At trial, the court heard live testimony from: (1) Officer Gerald Fletcher, the investigating officer; (2) plaintiff, Amanda Caporossi; (3) Jacquet Boyd, a passenger in Ms. Trapani’s vehicle; (4) Clint Black, a witness; and (5) Brian Atchley, a witness. Numerous depositions were also entered into the record as exhibits including that of Erica Aucoin, a witness; Officer Christopher Colvin; Christopher Payne; Leigha Lowe; |sMiriam Upchurch; and the video deposition of Ms. Trapani as she had since moved and now resided in Texas.
After considering all of the evidence, the trial court found that there were numerous discrepancies in the testimonies and depositions. Specifically, the court observed that the witnesses disagreed about in which lane Ms. Trapani had been driving and whether or not she had attempted to apply her brakes before the accident. Based on the discrepancies, the trial court relied heavily on the testimony of Brian Atchley, a civil engineer, finding him to be the most credible and observant witness.
At the time of the accident, Atchley was driving immediately behind Ms. Trapani on Clyde Fant Parkway. Atchley testified that on the day of the accident there was an excessive amount of traffic and cars turning without yielding the right of way. In fact, he said that because the traffic was so “alarming and chaotic that day” he began to slow down and take his foot off the accelerator prior to reaching the intersection because he was unsure whether the drivers ahead were going to yield the right of way. The trial court found his actions to be representative of what a reasonable driver would and should have done in the situation and used them as a point of comparison for Ms. Trapani’s actions.
Furthermore, when asked, based on his experience as a civil engineer, whether it would have made a difference had Ms. Trapani been traveling 55 m.p.h. versus 60 m.p.h. and whether Ms. Trapani could have avoided the accident, Atchley testified that the difference of 5 m.p.h. would not have |9made a difference in this scenario. In his opinion, the reaction time would have been the same.
The court also heard testimony from the investigating officer, Gerald Fletcher. In his deposition, Officer Fletcher agreed with Atchley that speed was not a factor in causing this accident. In fact, he said the officers did not even investigate the speed of the Trapani vehicle because it was not considered a cause of this accident. Officer Fletcher also testified that, in his opinion Ms. Upchurch was entirely at fault in causing this accident. The trial court, however, disagreed with Officer Fletcher’s statement as well as his opinion, that the driver with the right-of-way is “always right,” stating that the officer “apparently did not understand Louisiana tort law and comparative fault.”
The court then also heard testimony from witnesses Christopher Payne and Leigha Lowe who both commented on the speed of Ms. Trapani’s vehicle. In fact, the trial court noted that most of the testimony included comments concerning the speed of the Trapani vehicle; all were in *234 agreement that Ms. Trapani was traveling above the speed limit through the intersection. The court also heard testimony from Clint Black and Jacquet Boyd, another witness and Ms. Trapani’s passenger; however, the court gave them little credence, finding that neither remembered much about the accident.
The court then closely analyzed the video deposition of Ms. Trapani, finding serious concerns regarding both her ability to accurately remember what happened the day of the accident, as well as her seemingly agitated | ^demeanor. Specifically, the court noted that Ms. Trapani could not remember where she had eaten although she said she had come from a late lunch before the accident, the fact that in her initial deposition she could not remember driving through a construction zone, which was contradictory to her statement in her later deposition, that she could neither confirm nor deny that she told the officer at the scene she was traveling 60 m.p.h. in a 55 m.p.h. zone, her testimony that she was in the left lane although Brian Atchley who was behind her stated she was in the right hand lane, her denial that the lei hanging from her mirror obstructed her view in any way, and finally, that although she admitted she saw two vehicles pull out in front of her she maintained that there was nothing she could do to avoid them in the road in front of her.
The trier of fact is owed great deference in its allocation of fault and may not be reversed unless clearly wrong. Clement v. Frey, 95-1119, 95-1163 (La.01/16/96), 666 So.2d 607. Like the assessment of damages, fault allocation is a factual determination and the trier of fact, unlike the appellate court, has the benefit of viewing firsthand the witnesses and evidence. Clement, supra. It is the court of appeal’s duty to give deference to the trier of fact.
Having reviewed the evidence in its entirety, and having observed the discrepancies in the witnesses’ testimony referred to by the trial court in its written reasons for judgment, we do not find that the court erred in its allocation of fault in this case.
| ^Penalties and Attorney Fees
Plaintiffs, the children of Ms. Upchurch, have answered the appeal, assigning as error the trial court’s failure to assess penalties and attorney fees against Ms. Upchurch’s UM insurer for its bad faith in its failure/refusal to tender its policy limits.
Louisiana Revised Statute 22:1892 (former La. R.S. 22:658) provides for the imposition of a penalty and an award of attorney fees against an insurer that fails to pay a claim due to its insured within 30 days of receipt of satisfactory proof of loss if said failure is arbitrary, capricious or without probable cause. La. R.S. 22:658 and its predecessor have been found applicable to uninsured motorist claims. Hart v. Allstate Insurance Co., 437 So.2d 823 (La.1983); Delores M. v. Southern Farm Bureau Casualty Insurance Co., 44,883 (La.App.2d Cir.01/06/10), 29 So.3d 654. In order to establish an insured’s legal entitlement to recover under a UM policy, a plaintiff must be able to establish satisfactory proof of loss, which is fault on the part of the uninsured or underinsured motorist which gives rise to damages and the extent of those damages. Hart, supra; Delores M., supra.
In the instant case, we find, as did the trial court apparently from its failure to assess penalties and award attorney fees, that plaintiffs failed to carry their burden of proving that the UM insurer received a “satisfactory proof of loss” of Ms. Upchurch’s UM claim. In order for Ms. Upchurch’s UM coverage to apply, there had to be an assessment of fault on *235 the part of Ms. Trapani, who in this case would be the underinsured motorist whose negligence or percentage of fault would serve to trigger the coverage of Ms. 112Upchurch’s UM policy. While there was no doubt whatsoever that Ms. Upchurch herself bore the majority of the fault for this tragic accident, there was a genuine dispute as to whether Ms. Trapani, the other driver, bore any percentage of the fault, as evidenced by the conflicting witness testimony and evidence in this case.

Conclusion

For the reasons set forth above, the judgment of the trial court is AFFIRMED. Costs of this appeal are to be assessed against defendant, Automobile Club Inter-Insurance Exchange.

. The dismissed defendants were Louisiana Department of Transportation and Development; the City of Shreveport; Austin Bridge & Road; Arch Specialty Insurance Company; Protection Services, Inc.; Travelers Property Casualty Company of America; American Guarantee and Liability Insurance Company; Unitrin Auto and Home Insurance Company, as the liability insurer of Rishaida Rochelle Trapani; and Rishaida Rochelle Trapani.