STEWART, J.
| ,This is an action for damages arising out of an automobile accident that occurred on November 11, 2011. The defendants, State Farm Mutual Automobile Insurance Company (“State Farm”) and Eloise Square (“Square”), appeal a judgment in favor of the plaintiff, Cheryl Baker (“Baker”). The trial court found that Square was 100% at fault for the automobile accident. Baker, individually, and on behalf of her minor son, was awarded $16,101.95 in damages. For the reasons set forth in this opinion, we find that Baker was negligent in causing this accident, and therefore, we reverse the judgment of the trial court.
FACTS AND PROCEDURAL BACKGROUND
This automobile accident occurred at approximately 7:00 p.m. on November 11, 2011, in Monroe, Louisiana. At this time, Square was traveling west on Winnsboro Road, while Baker, accompanied by her minor son, was traveling east on Winns-boro Road. The traffic light at the intersection of Winnsboro Road and Highway 165 was green for both directions of travel.
As Square proceeded through the intersection, Baker, who was attempting to turn left at the intersection onto Highway 165, collided into the driver’s side of Square’s vehicle. The collision occurred in Square’s lane of travel, which was the right, or outside, lane. Baker was issued a traffic violation for an improper turn.
On March 13, 2012, Baker filed suit against Square and her insurer, State Farm. On March 26, -2012, Square filed suit against Baker and her insurer, USA-gencies. These suits were consolidated on May 12, 2012, and ^Square’s suit was settled and dismissed on December 14, 2012. On March 10, 2013, Baker’s suit proceeded to trial.
On June 25, 2013, the trial court found Square 100% at fault, and assessed damages in favor of Baker and her minor son in the total amount of $16,101.95. State Farm and Square (collectively referred to as “appellants”) appeal.
LAW AND DISCUSSION
The appellants present seven issues on appeal (verbatim):
1. Whether the trial court erred by failing to apply, the statutory presumption of fault pursuant to La. R.S. 32:122 and 32:104 against Baker as the left-turning motorist in this intersectional collision.
*408 2. Whether the trial court erred in finding that Square was speeding, and at fault for this accident.
3. Whether the trial court erred in finding that Square saw Baker’s vehicle making a left turn from a distance of 906 feet while near a used car lot.
4. Whether the trial court erred in finding the damage to Baker’s vehicle was to the right, front passenger’s side, and basing its determination of fault on such error.
5. Whether the trial court erred in failing to acknowledge the undisputed testimony of the investigating officer.
6. Whether the trial court erred in making a negative “credibility” judgment against Square for not returning to the courtroom after the first day of trial so that she could return to work.
7. Whether the trial court erred in failing to acknowledge Baker’s admission of fault by paying the traffic ticket for an improper turn.
The bulk of the appellants’ argument centers upon their assertions that the trial court erroneously failed to apply the statutory presumption of | pliability against Baker, the left-turning motorist, and that the trial court erroneously found Square 100% at fault for the accident. In order for Baker to overcome the presumption of fault against her, she must prove, as the left turning motorist, that she was free from fault in the accident.
On review, an appellate court may not set aside the findings of fact by the trial court unless those findings are clearly wrong or manifestly erroneous. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129; Stobart v. State through Dept. of Transp. & Development, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989); Amos v. Walker, 45,670 (La.App.2d Cir.11/3/10), 55 So.3d 129, writ denied, 2010-2664 (La.1/28/11), 56 So.3d 960. An appellate court must not base its determination on whether it considers the trier of fact’s conclusion to be right or wrong, but on whether the fact finder’s conclusion was reasonable. Stobart, supra; Amos, supra.
Pursuant to Watson v. State Farm Fire & Casualty Insurance Co., ¶ 469 So.2d 967 (La.1985), the trier of fact will compare the relative fault of the parties in the assessment of liability. The amount of fault, if any, attributable to any party, and thus the apportionment of it is a question of fact to be decided by the trier of fact. Upchurch v. State ex rel. La. Dept. of Transp. & Dev., 48,354 (La.App.2d Cir.8/17/13), 123 So.3d 228, writ denied, 13-2153 (La.11/22/13), 126 So.3d 489; Underwood v. Dunbar, 628 So.2d 211 (La.App. 2d Cir.1993), writ denied, 94-0026 (La.2/25/94), 632 So.2d 767. A trier of fact’s allocation of fault is subject to the manifest |4error/clearly wrong standard of review. Upchurch, supra; Hebert v. Rapides Parish Police Jury, ¶ 06-2001 (La.4/11/07), 974 So.2d 635.
In order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Salvant v. State, 05-2126 (La.7/6/06), 935 So.2d 646; Stobart, supra; Amos, supra. The appellate court must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.4/3/02), 816 So.2d 270; Amos, supra.
*409 Where the fact finder’s conclusions are based on determinations regarding the credibility of a witness, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell, supra. Even though an appellate court may feel its own evaluations of credibility and reasonable inferences of fact are as reasonable, it- should not be disturb reasonable findings of the trier of fact when there is conflict in the testimony. Rosell, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). With regard to decisions of law, a trial court’s ruling is subject to de novo review. Hall v. Folger Coffee Co., 03-1734 (La.4/14/04), 874 So.2d 90.
|sThe driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard. La. R.S. 32:122. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. La. R.S. 32:104(A). Judicial interpretations of La. R.S. 32:104(A) have made it clear that a left-turning motorist has a strong duty of care. Pruitt v. Nale, 45,483 (La.App.2d Cir.8/11/10), 46 So.3d 780; Bruce v. State Farm Ins. Co., 37,704 (La.App.2d Cir.10/29/03), 859 So.2d 296.
Before attempting a left turn, a motorist should ascertain whether it can be completed safely. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305; Upchurch, supra; Slagel v. Roberson, 37,791 (La.App.2d Cir.11/18/03), 858 So.2d 1288, writ denied, 03-3508 (La.3/12/04), 869 So.2d 824. This duty includes properly signaling an intention to turn left and keeping a proper lookout for both oncoming and overtaking traffic in order to ascertain that the left turn can be made with reasonable safety. Bruce, supra.
Because a left turn is one of the most dangerous maneuvers for a driver to execute, there is a presumption of negligence on a left-turning motorist involved in a motor vehicle accident. Green v. Nunley, 42,343 (La.App.2d Cir.8/15/07), 963 So.2d 486; Hughes v. Scottsdale Ins. Co. 35,043 (La.App.2d Cir.8/22/01), 793 So.2d 537. Moreover, in a vehicle collision case, there is a presumption of negligence when the other party can prove that the turning motorist executed a left hand turn and crossed the center line at the time of impact. Miller v. Leonard, 588 So.2d 79 (La.1991); Upchurch, supra; Slagel, supra. In a vehicular collision case, the [oncoming driver] may take advantage of a presumption of the [left-turning motorist’s] negligence when the [oncoming driver] proves that the [left-turning motorist] executed a left hand turn and crossed the center line at the time of the impact. Silva v. Calk, 30,085 (La.App.2d Cir. 12/10/97), 708 So.2d 418. The burden rests heavily on the motorist who desires to make a left hand turn to explain how the accident occurred and to show that he or she is free from negligence. Shelton v. Safeway Ins. Co. of La., 36,736 (La.App.2d Cir.1/29/03), 836 So.2d 1225.
Likewise, jurisprudence has established that an oncoming driver has a right to assume that the left-turning motorist will obey the law in allowing her to continue in her proper lane of travel and *410 will yield to her right-of-way. Upchurch, supra; Cyrus v. U.S. Agencies Ins. Co., 41,826 (La.App.2d Cir.3/14/07), 954 So.2d 261; Slagel, supra.
All motorists on Louisiana highways must drive with due 'regard for the traffic on the highway and have an affirmative duty not to drive faster than is reasonable and prudent under the conditions and potential hazards existing at the time. La. R.S. 32:64(A); Upchurch, supra; Cyrus, supra. Thus, notwithstanding the presumption of negligence attributed to a leftjturning7 driver, a favored motorist can still be assessed with comparative fault if her substandard conduct contributed to the cause of the accident. Upchurch, supra; Terro v. Casualty Reciprocal Exch., 93-593 (La.App.3d Cir.2/2/94), 631 So.2d 651, writ denied, 94-0522 (La.4/22/94), 637 So.2d 157.
At trial in the instant case, Baker testified that she was traveling 35 mph approaching the traffic light at the intersection of Winnsboro Road and Highway 165, but slowed down to 20 to 25 mph because the light was red. The light changed to green as she approached the intersection, and Baker stated that she maintained her speed of 20 to 25 miles per hour as she proceeded to make her left turn. When questioned about Square’s vehicle approaching the intersection and the subsequent accident, Baker gave the following responses:
Q: What was your sense of the other vehicle coming? Did you know the direction of the other vehicle?
A: It, uh, seemed to be coming straight.
Q: All right. And what was your sense about you taking a left turn with that other vehicle coming straight?
A: I know that I had plenty of time to complete my turn. The vehicle seemed to have sped up.
BY COURT: I didn’t hear that statement. The vehicle seemed to have what?
A: It started to speed up.
Q: Why do you say that?
A: Because I had plenty time to complete the turn and one I was almost into just about, you know, into my turn, it was right there.
IsQ: Okay. Uh, and then what happened?
A: The vehicles made impact.
Q: The two vehicles collided? What part of your vehicle was damaged, Ms. Baker?
A: The passenger [sic] vehicle, the front bumper, the grill, and the hood all had to be replaced.
Baker further testified that she told Corporal Lisa B. Quillar that Square “sped up.” Baker admitted that she had been given a traffic ticket for improper turn, and that she paid the fine. Baker also testified that she noticed Square approaching the intersection in the opposite direction as she was making her left turn. However, she testified that she did not feel she caused the accident.
On approaching the topic of speeding, Baker’s counsel asked Square during her testimony at trial if she witnessed the traffic light being red as she approached the intersection. She gave the following response:
Q: As you approached the intersection, did you ever see any red lights?
A: And (sic) red lights?
Q: Mm-hmm.
A: Yes, and by the time I got to the car lot it was green so I — I didn’t really have to get on my brakes because I had broke it down.
*411 Q: So the car lot is on the left? That’s the car lot you’re making reference to?
A: Yes.
Q: And it was red — that traffic light ahead of you but by the time you got to the car lot, the light turned green.
A: Yes.
loQ: And you were traveling how fast as you passed that car lot?
A: Probably about 20.
Q: Are you sure it was red when you passed that car lot on 15?
A: The car lot on 15?
Q: Yeah, the car lot—
A: When I got to the car lot—
Q: —on 15—
A: —on 15, my light turned green.
Square further testified that she entered the intersection with the intent to proceed straight through the intersection. Her traffic light was green. She further testified that when she entered the intersection, she saw the other vehicle turning left toward her. Square further testified that her car suffered damage on the door, the fender, and the bumper of the driver’s side. Square disagreed with Baker’s contention that she sped up in the intersection.
Corporal Quillar, a 12-year veteran of the Monroe Police Department who completed an accident reconstruction course at Northwestern, prepared the accident report in the instant case. In her deposition, she testified that she gave Baker a citation for improper turn because “at that intersection, if she’s trying to execute a left turn, she must yield to oncoming traffic.” Quillar also testified that she did not see any evidence from what she viewed at the scene to cause her to believe that speed was a factor in the accident. In fact, Quillar characterized the accident as “a low impact collision.” Quillar further testified that she found no evidence at the scene to indicate that Square violated any traffic regulation or statute. No witnesses came forward regarding the accident.
| mSince vehicle debris was left in the road after Baker and Square moved their cars, Quillar was able to ascertain the location of the point of impact, which was inside the intersection. More specifically, the vehicle debris was located in Square’s travel lane. Viewing this evidence at the scene, Quillar was able to ascertain that Baker’s vehicle had entered Square’s lane of travel when the collision occurred. Quillar testified that the evidence showed that Square had the right-of-way at the time of the collision.
In Quillar’s report, she recorded Baker’s estimated speed, as reported by Baker, as 25 miles per hour. In a diagram of Baker’s car, she marked the “whole front bumper area, front grille area and bumper” as damaged. She confirmed that the damage to Baker’s vehicle was across the front of her vehicle.
Quillar recorded Square’s estimated speed, as reported by Square, as 25 miles per hour. In a diagram of Square’s car, she marked the “left front quarter panel, the left front corner bumper area, and the undercarriage” as damaged. She confirmed that the damage to Square’s vehicle was to the front driver’s side corner or quadrant of the vehicle. Quillar testified that she did not see any evidence at the scene indicating that Square’s speed was over 25 miles per hour at any time before or during the accident. Quillar did not issue a citation or ticket to Square.
When asked about the kind of evidence she would look for at the accident scene to determine if speed was a factor, Quillar gave the following response:
_JjjQ: If one participant in an intersec-tional collision like this claims speed had something to do with it, you know, that *412 the other car sped up and caused it, what kind of thing would you look for at the accident scene to determine if that played a[sic] factor?
A: Skid marks mainly. But in this case there wasn’t — it was just — there wasn’t any. It was just a normal collision, and there was nothing to suggest speed. If there was more speed involved, then her — If the driver of the Cavalier had been speeding more, then my assumption, I’m assuming that if she made enough time, then she — the damage would probably be further to the back ...
Marshall Lyles, a retired state trooper with training in accident reconstruction, testified at trial as a lay witness. It was previously stipulated and ruled that he would not be offering any expert opinion. He testified that he went to the scene of the accident on several occasions at the request of Baker’s counsel. Lyles did not go to the scene on the day the accident occurred. The trial court overruled Square’s counsel’s objection and allowed Lyles to testify, as a lay witness, that he measured the distance of Square’s route of travel to the intersection, particularly the distance from the used car lot where Square testified she first saw the light red. The trial court again overruled Square’s counsel’s objection and allowed Lyles to further testify that he timed the lights, and determined that they change every eleven seconds. Lyles testified that he was given the accident report showing where the point of impact occurred so that he could include it in his measurements. He was also given Corporal Quillar’s deposition.
On cross-examination, Lyles admitted that he had not been provided any documentation to show that either Baker or Speed exceeded the speed |12limit. He further admitted that he had noted that Corporal Quillar indicated in her deposition that there was no evidence at the scene to indicate speed was a factor in the collision.
During trial, the trial court noted that “there was evidence through testimony of Mrs. Baker [sic] I believe that Mrs. Square’s vehicle speeded [sic] up.” The trial court, who determined that the key issue in the case was increased speed, stated in its written reasons for judgment:
In this case the preponderance of the evidence establishes that Square increased the speed of her vehicle to reach the intersection and she was fully aware of Baker making a left turn. Given the distance she was from the intersection when she observed Baker making the left turn, the speed at which she stated she was initially traveling and Baker’s testimony regarding Square’s action, the court finds that Square was at fault. The credibility of the witnesses was at issue in making that determination. Observing Square as she testified, her absence from the proceedings after testifying, and not offering any rebuttal to Lyles’ testimony are factors that diminish her credibility on the key issue of increased speed.
In its written reasons for judgment, the court acknowledged La. R.S. 32:122 and the accompanying presumption of negligence applicable to Baker as the left-turning motorist involved in this accident. It further found that Baker overcame this presumption because the “preponderance of the evidence established that Square increased the speed of her vehicle to reach the intersection and she was fully aware of Baker making a left turn.”
The appellants contend that the trial court erroneously made a negative credibility determination against Square for not returning to the courtroom after the first day of trial so that she could return to work. The trial court found that “the *413 credibility of the witnesses was at issue” in making the determination that Square was at fault. Specifically, it noted [ 1sthat “observing Square as she testified, her absence from the proceedings after testifying, and not offering rebuttal to Lyles’ testimony are factors that diminish her credibility on the key issue of increased speed.” This trial was originally scheduled for one day, March 19, 2013, but it actually lasted three days. Square was subpoenaed to appear on March 19, 2013, and she requested time off from her job to testify. Square remained in the courtroom for the remainder of the day after testifying.
The appellants argue that the trial court erroneously failed to acknowledge Quillar’s undisputed testimony in making its ruling. The written reasons for judgment, as well as the judgment, are void of any mention of Corporal Quillar’s deposition. Instead, the trial court relied heavily on the “estimates” of lay witness Lyles regarding the issue of speed. Since Lyles did not take measurements the day the accident occurred, his measurement calculations do not reflect the exact point of impact. Although he testified that the traffic light changed every 11 seconds, no DOTD records were presented regarding the timing of the lights the actual day of the accident.[1] Nevertheless, we are inclined to accord considerable weight to the testimony of the investigating officer respecting the physical facts observed at the scene of the accident. See Miller v. Leonard, 588 So.2d 79 (La.1991).
This court notes the absence of an eastbound turn signal for Baker to follow and/or a sign prohibiting a turn. It is undisputed that both Baker and 114Square had the green light, and that the accident happened in the middle of the intersection in Square’s lane of travel. Baker suffered damage primarily to the front of her vehicle, while Square suffered damage primarily to the driver’s side of her vehicle. Further, during Baker’s testimony, she acknowledged that she saw Square’s vehicle prior to her commencing her left turn. On the other hand, Square testified that she did not see Baker until after she had entered the intersection.
The appellants should have been afforded the benefit of a presumption of Baker’s negligence since Baker was executing the left-hand turn, and as an oncoming driver, Square had the right to assume Baker would obey the law in allowing her to continue in her proper lane of travel and to yield to her right-of-way. See Slagel, supra. It is clear that Baker, who admitted that she saw Square and thought she had enough time to complete her turn, violated her duty when intending to turn left to yield the right-of-way to vehicles approaching from the opposite direction which are so close as to constitute an immediate hazard. See La. R.S. 32:122. Square did not see Baker’s vehicle turning left until she entered the intersection. After a careful review of the record, we find that the trial court erroneously concluded that Baker overcame the presumption of fault against her. The evidence does not prove that Square was speeding at the time of the accident.
| ^CONCLUSION
For these reasons, the judgment of the trial court finding Square 100% liable is hereby reversed. The costs of this appeal are assessed to Cheryl Baker.
REVERSED AND RENDERED.
*414 APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, CARAWAY, MOORE and GARRETT, JJ.
Rehearing denied.

. Baker's counsel filed a post-trial motion to admit DOTD records and Square's counsel filed a motion to strike. After a hearing, the trial court denied the admission of the DOTD records, making the motion to strike moot.