DREW, J.
pLaToya Leonard seeks damages from James Lee and his insurer, USAgencies Casualty Insurance Company, for injuries sustained when their vehicles collided at the intersection of Kings Highway (“Kings”) and Hearne Avenue (“Hearne”) in Shreveport. At issue is whether the trial court correctly assessed Leonard with 100% of the fault for failure to yield during her left turn. Based upon our review of this sparse record,[1] we conclude that the negligence of both parties caused this minor accident.
FACTS AND TRIAL COURT’S RULING
On October 26, 2012, at approximately 8:00 p.m., plaintiff, LaToya Leonard, was driving a 2007 Nissan Altima west on Kings. She stopped at the traffic light at the intersection of Kings and Hearne. Other vehicles stopped behind her.
Driving east in a 1995 Ford truck on Kings, Lee approached the same intersection, but from the opposite direction. Leonard saw Lee’s truck several car lengths to the west as the truck began its approach towards her.
When the light changed,[2] Leonard first delayed her turn. When drivers behind her began honking, however, she honked back, and turned left (south) onto Hearne. *1086 The left portion of Lee’s front bumper collided with the back passenger side door of Leonard’s car, as each vehicle turned south onto Hearne.
|zAfter hearing the testimony at trial and reviewing the depositions, medical records, and insurance documentation, the trial court issued a written opinion in which Leonard’s claims were denied at her costs. The trial court correctly stated the law, but we disagree with its application of these unique facts to the law.[3]
TESTIMONY
I. OFFICER JUSTIN DEPEW
Shreveport Police Department (“SPD”) Officer Depew’s deposition was placed in evidence by agreement of counsel.[4] He did not testify at trial.
His deposition revealed that:
• his report was based solely upon what he was told by the parties;
• he did not witness the accident and talked to no impartial witnesses;
• his vague recall of the crash was based upon the content of the report;
• he mistakenly reversed the drivers in his written narrative;[5]
• Lee told him that Leonard turned left and crossed into the westernmost southbound lane as both were beginning to proceed south on Hearne;
• based upon what the drivers reported, he placed the dot for the point of impact in the westernmost, outside lane;
[¾* he concluded Lee was not at fault in the accident;
• his drawing of the collision site was not drawn to scale;
• he did not know if the drawing was accurate;
• he-was not an accident reconstruction expert;
• he wasn’t sure the vehicular positions in his diagram were correct;
• he took no measurements at the scene;
• the vehicles had ■ been moved off the roadway by the time he arrived;
• he did not know if Leonard was “turned all the way or not”;
• Lee told him that he didn’t see the other vehicle[6] before the crash;
• he was not sure if Leonard had completed her turn before the crash;
• both parties should have yielded;
• Leonard told him at the scene that she saw Lee’s vehicle and thought he was going to stop, so she turned left and they ran into each other;
• he saw no impact debris at the scene;
• he issued no citation and interviewed no one except the parties; and
• total damage was a crease down the passenger side of Leonard’s car. •
*1087 II. LATOYA LEONARD
Ms. Leonard testified at trial. She had also been previously deposed.
Leonard was in her 30s and lived with her five children. She obtained her GED at Vo-Tech and worked as Certified Nursing Assistant (“CNA”) at the Glen. Retirement System, working as a CNA/housekeeper. Her rate of pay was $9.45 per hour. She missed three days’ work because of the accident, therefore sustaining a total of $150.40 in lost wages.
Her insurance company paid for the repair of her vehicle.
14At the intersection of Hearne (north and south) and Kings (east and west), Leonard was stopped at the red light in the inside westbound lane and about to turn left to head south on Hearne. Other drivers were behind her at the traffic signal. She saw Lee’s truck turn onto Kings Highway and drive east toward her. She estimated the truck was far enough away for her to make her turn safely.
Leonard observed, “We was like at a distance, so I went ahead and I started turning. So as I started turning, I turned into Hearne, I looked up and saw the truck there. It was right there. And then so as I’m turning-yeah, I completed my turn and then it like hit my passenger back door.”[7]
Leonard said she stopped and watched Lee’s truck approach. She then heard honking from the vehicles behind her. She honked back and turned.[8]
Leonard called the police and had no interaction with Lee. No witnesses stayed at the scene. The officer spoke with the two drivers separately. Leonard declined medical attention at the scene, even though her head and left shoulder struck the driver’s window at impact.
Leonard insisted that she had completed her left turn and was facing south on Hearne when her back passenger door was struck by Lee.
Both parties waited for the police in the Subway parking lot on the southwest corner of the intersection. At trial, Leonard first contended the | Rpolice diagram should have placed her car further south on Hearne. She admitted on cross-examination that she had stated in her deposition that the diagram correctly reflected the location of the vehicle at impact, as well as which portion of each vehicle struck the other.
Leonard described the damage to her vehicle as a “big slotted dent” on the back passenger door back to the wheel. She drove her car from the scene.
Leonard testified she was in good health, had no physical restrictions, and took no medication prior to the wreck. The next day, she awoke with back, neck and head pain. She went to the emergency room at Willis-Knighton Medical Center, where she was X-rayed and given prescriptions for pain. The $787.70 ER bill was placed into evidence.
The record contains a record of Leonard’s chiropractic treatment at Waltemate Wellness Center from November 6, 2012, through January 14, 2014. The bill totaled $2,387.00. Leonard explained that her injuries adversely affected her job performance, her leisure activities with her children, and her running.
*1088 She testified that'she was pain free by the end of February 2013.
III. JAMES LEE
Lee was not deposed before trial. He testified at trial that:
• he was going to get medicine for his mother when the accident occurred;
• about 8:00 p.m., he turned right from Velva Street onto Kings;
• he then drove east on Kings toward the intersection with Hearne;
• he had the green light and his right turn signal was flashing;
h* he turned right into the southbound right-hand outside lane of Hearne;
• he had entered his lane of travel when and where the contact occurred;[9]
• total damage to his vehicle was a rubber piece pushed off his bumper;
• he was able to push the piece of rubber back into place;
• both vehicles were turning together;
• the officer’s diagram correctly depicted the point of impact;
• he denied telling the officer that he never saw the other car before the crash;
• he stayed in his truck during the entire incident and investigation;
• he never spoke with Leonard;
• the damage to the Leonard vehicle was on the back passenger side door;
• his truck did not strike Leonard’s car;
• instead, her car came into contact with his truck; and
• Leonard’s car had not completed her turn at the time of impact.
LAW
Judge Stewart’s opinion in Baker v. State Farm, Mut. Auto. Ins. Co., 49,468 (La.App.2d Cir.1/21/15), 162 So.3d 405, provides a succinct review of the law pertaining to left-turning motorists. In Baker, this court reversed the trial court’s decision in favor of the left-turning motorist. Baker saw the vehicle coming from the opposite direction and concluded she had sufficient time to safely turn left. This |7court determined that Baker, as left-turning motorist, failed to overcome the presumption of fault against her.
It is well settled that a reviewing court may not set aside the findings of fact by the trial court unless those findings are clearly wrong or manifestly erroneous. An appellate court must not decide whether it considers the trier of fact’s conclusion to be right or wrong, but the reviewing court must determine whether the fact finder’s conclusion was reasonable. Baker, supra; Stobart v. State through DOTD; 617 So.2d 880 (La.1993).
In assessing liability, the trier of fact must compare the relative fault of the parties. The decisions of the trier of fact as to the amount of fault, if any, attributable to a party, and the apportionment of fault are questions of fact. The manifest error/clearly wrong standard applies to the review of the trier of fact’s allocation of fault. Baker, supra.
In order to reverse a fact finder’s factual determinations, an appellate court must review the entire record and find that (1) a reasonable factual basis does not exist for the finding, and (2) the record establishes that the fact finder is clearly wrong or manifestly erroneous.
Although it would have made different factual findings and reached a different decision, the appellate court must *1089 not reweigh the evidence or substitute its own factual findings. Baker; supra.
Where the trial court’s factual conclusions are based on credibility determinations of a witness, the manifest error standard'demands great deference to the trier of fact. Only the trier of fact can be aware of the ^variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Although an appellate court may feel its own evaluations of credibility and reasonable inferences of fact are as reasonable as those of the trial court, the reviewing court should not disturb reasonable factual findings when there is conflict in the testimony.
Our law is replete with other provisos relative to turning motorists, including La. R.S. 32:122,[10] R.S. 32:101(A),[11] and R.S. 32:104(A).[12] Judicial interpretations of La. R.S. 32:104(A) are clear that a left-turning Lmotorist has a strong duty of care. Bruce v. State Farm Ins. Co., 37,704, p. 4 (La.App.2d Cir.10/29/03), 859 So.2d 296, 301; Baker, supra.
“Before attempting a left turn, a motorist should ascertain whether it can be completed safely. This duty includes properly signaling an intention to turn left and keeping a proper lookout for both oncoming and overtaking traffic in order to ascertain that the left turn can be made with reasonable safety.” Bruce, supra; Baker, supra.
“The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard.” La. R.S. 32:122. Because a left turn is one of the most dangerous maneuvers for a driver to execute, there is a *1090 presumption of negligence on a left-turning motorist involved in a motor vehicle accident. Green v. Nunley, 42,343 (La.App.2d Cir.8/15/07), 963 So.2d 486.
Moreover, when vehicles collide, there is a presumption of negligence when the other party can prove that the turning motorist executed a left hand turn and crossed the center line at the time of impact. In a vehicular collision case, the (oncoming driver) may take advantage of a presumption of the (left-turning motorist’s) negligence when the (oncoming driver) proves that the (left-turning motorist) executed a left hand turn and crossed the center line at the time of the impact. The burden rests heavily on the motorist who desires to make a left hand turn to explain how the accident occurred and to show that he or she is free from negligence.”

Baker, supra.

Jurisprudence has established that an oncoming driver has a right to assume that the left-turning motorist will obey the law in allowing him to continue in his proper lane of travel and will yield to his right of way. Upchurch v. State, 48,354 (La.App.2d Cir.8/17/13), 123 So.3d 228, writ denied, 2013-2153 (La.11/22/13), 126 So.3d 489; Baker, supra. Notwithstanding the presumption of negligence attributed to a left-turning driver, a favored motorist can still be assessed with comparative fault if his substandard conduct contributed to the cause of the accident. Baker, supra. This is the situation here.
DISCUSSION
At the request of this court, the parties submitted memoranda on whether the Baker opinion is factually distinguishable and what relevance that judgment has to the present dispute. With the help of counsel, we conclude that the Baker decision has significant factual differences with the instant controversy.[13]
Here, the investigating officer’s testimony was unhelpful and not entitled to be given significant weight. At deposition, he claimed less than five years of experience as a police officer. Even his testimony about the type of traffic lights and the intersectional travel lanes was halting, incomplete, and vague. He had no recall of the accident and stated, “The In only thing I really remember is that I believe that the two parties kind of got into an argu-mente.]” Both parties denied any conversation or argument.
The officer admitted mistakenly switching the numbers for each motorist on page two of his report, which was not placed into evidence. The officer had no recall of seeing debris which could have indicated *1091 the point of impact. Based upon what the parties told him, the officer placed the point of impact in the outermost right-hand lane of Hearne, into which Lee was turning. The officer felt that Lee was not at fault, as he had the right of way. No citations were issued.
Stating he was not an accident reconstruction expert, and not an expert in traffic laws, the officer testified that the vehicles had been moved by the time he arrived at the scene. Everything in his report was based upon what the parties told him. He made no measurements and his drawing was not to scale. He could not recall whether the parties stated Leonard had completed her left-hand turn onto Hearne. The parties both flatly contradicted the law officer’s statement that the damage ran down the entire passenger side of Leonard’s car. Both Leonard and Lee stated the damage was confined to her passenger-side rear door.
Contradicting his earlier statements, the officer opined that Lee should have yielded the right of way. Stressing he did not know whether Leonard had completed her turn, the officer belied his conclusion that Lee was not at fault by saying that Lee had a duty to yield to a vehicle in the inside southbound lane of Hearne. In the officer’s view, Lee failed to yield and struck Leonard.
| ^Recognizing the great deference due to the trial court’s finding of fact, we are constrained to find that the trier of fact was clearly wrong in finding that Lee was free from negligence in contributing to this accident. Notwithstanding the presumption against the left-turning motorist carefully applied by the trial court, the trier of fact must compare the relative fault of the parties and assess comparative fault when appropriate. The absence of this examination of relative fault resulted in the judgment lacking a reasonable factual basis that Lee was not at fault. That factual finding was clearly wrong. Baker, supra.
If one accepts the investigating officer’s statement that Lee did not see Leonard’s car before the collision, then it is clear that Lee’s conduct was substandard in failing to see Leonard’s vehicle. To reach the point of impact, Leonard had to traverse two northbound lanes of Hearne, turn through the intersection under the traffic light, before proceeding south on Hearne. Leonard’s car constituted a clearly visible hazard as he drove into the intersection. Lee should have seen Leonard. He failed to keep a proper lookout.
If we accept Lee’s statement that he saw Leonard begin her left turn as he approached the intersection, Lee was clearly at fault in failing to avoid Leonard’s car whether it was approaching his or was already in front of his truck as he tried to turn south onto Hearne. Lee was clearly negligent in not avoiding contact with the turning motorist.
Leonard argues that she had preempted the intersection by completing her turn into the inside southbound lane closest to the center median. The officer did not know if she had completed her turn and declined several | ^opportunities to support Leonard’s version. Lee was emphatic that Leonard had not completed the turn and that she turned into him and Leonard provided contradictory statements on whether the turn was complete or almost complete.
Both parties agreed that Lee’s truck struck Leonard’s car on the rear passenger door. With this joint admission, it is clear that the damage reported by the parties amply demonstrates Leonard was well into her left hand turn at impact.
By her own description of the accident, Leonard admitted that she saw Lee’s oncoming truck and was undecided and hesi *1092 tant about making her left turn. When following drivers at the traffic light blew their horns at her, she again hesitated and then proceeded to make a left turn. Whether angry, flustered, distracted, or impatient, Leonard acknowledged that she responded and blew her horn back at the other drivers. Leonard saw Lee’s vehicle and negligently made a left turn for which she did not have sufficient time or space.
Both drivers should have seen each other; both drivers could have easily avoided this wreck.
Our review of the testimony and the paucity of exhibits makes it clear that negligence of both drivers caused this collision. Therefore, we set aside the portion of the trial court’s judgment finding Lee free from fault and Leonard 100% responsible for the collision. Both drivers saw or should have clearly seen each other in time to safely avoid this low impact collision. We cast each party with comparative fault of 50%.
luDAMAGES
As to damages, Leonard presented little evidence and Lee presented none. Leonard claims and we find she suffered $3,325.10 in special damages.[14]
She was somewhat limited in her activities from the October 12 accident until she was pain free at the end of the following February. Because this was a soft tissue injury of limited duration and considering previous awards for this type injury, we fix her general damages at $2,000.00, for her pain, suffering, and inconvenience. Because of her comparative fault, each award is reduced by 50%.
CONCLUSION
There shall be judgment assessing each party with 50% comparative fault. . Accordingly, after his apportionment for fault, James Lee and his insurer are liable to LaToya Leonard in the amount of $1,662.55 for special damages and $1,000.00 for general damages. Each party shall pay one-half of the costs of this appeal.
DECREE
JUDGMENT AMENDED, AND, AS AMENDED, AFFIRMED.

. Consider: No witnesses testified except the plaintiff and the defendant. The record contains no photos of the intersection, no photo of the damage to either car, and no drawn-to-scale map of the intersection.

. The traffic light had no protected left-turn arrow.

.The trial court ruled: "It was undisputed that both Plaintiff and Defendant, James Lee, had green lights at the time the collision occurred. Plaintiff .was turning or had just turned left when Defendant, James Lee, while turning right stuck her vehicle at the passenger rear door. Plaintiff attempted to show that Plaintiffs vehicle had already made her turn when struck and somehow made it through the intersection. From the evidence presented, the court cannot so find. The law is clear that a person attempting a left turn without an arrow has a duty to proceed with caution and must yield to oncoming traffic turning right and must proceed with caution. She did not do that in this instance. The Court can find no fault on the part of the Defendant driver, James Lee.”

. His deposition was labeled P-1, but entered as a joint exhibit. Ms. Leonard's deposition was utilized at trial, and is also labeled P-1.

. His written narrative was discussed but not entered into evidence.

. Lee denied at trial that he said this to the officer.

. Confusingly, Leonard initially testified that she turned into the right outside lane of Hearne and the impact jolted her car onto the center median of Hearne. This conflicts with her later testimony at trial that at the moment of the crash, she had straightened out and was completely in the inside lane of Hearne.

. "So I sat there for a minute and then I proceeded to turn, because other people was blowing at me because I was just sitting there.”

. "That’s when she came in on me and tried to straighten up, but she came in on me there.”

. La. R.S. 32:122. Vehicle turning left at intersection
The driver within an intersection and intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard.

. La. R.S. 32:101(A). Required Position and Method of Turning at Intersections
The driver of a vehicle intending to turn at an intersection shall proceed as follows:
(1) Right turns. Both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway.
(2) Left turns on two-way roadways. At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.
(3)Left turns on other than two-way roadways. At any intersection where traffic is restricted to one direction on one or more of the roadways, the driver of a vehicle intending to turn left at any such intersection shall approach the intersection in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle and after entering the intersection the left turn shall be made so as to leave the intersection in the safest lane lawfully available to traffic moving in such direction upon the roadway being entered.

.La. R.S. 32:104(A). Turning Movements and Required Signals
A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.

. Both Baker (westbound) and Square (eastbound) were traveling straight on Winnsboro Road when Baker made an unsafe left turn, causing the collision. Square’s vehicle was moving straight forward when the collision with Baker's left-turning vehicle occurred. The damage to Baker's left-turning car occurred on the passenger side front bumper, grille, and hood. Square’s vehicle sustained damage on the driver's side door, fender, and bumper. In contrast, this collision occurred as both motorists were turning south onto Hearne Avenue and the damage was apparently limited to the rear passenger door of Leonard's car.
In Baker, this court accorded considerable weight to the investigating officer’s testimony. A 12-year veteran of the Monroe Police Department, the officer had completed an accident reconstruction course and cited Baker for making an improper turn by failing to yield while making a left turn. Describing it as a "low impact collision,” the officer found no evidence at the scene to indicate speed was a factor, specifically stating there were no skid marks. Moreover, the officer pinpointed the point of impact inside the intersection based upon vehicle debris at the scene. There were no witnesses. The officer found nothing to indicate Square violated any traffic regulations.

. Her special damages are broken down as follows: $787.70 for the emergency room; $2,387.00 for her chiropractor; and $150.40 in lost wages.